# MERLE O. ANDERSON AND OTHERS v. MIKEL DRILLING COMPANY AND OTHERS.

102 N. W. (2d) 293.

April 1, 1960—Nos. 37,859, 37,860, 37,861.

*Walter P. Wolfe,* for appellants.
*Harry H. Peterson* and *Doyle Watson,* for respondents.

DELL, CHIEF JUSTICE.

Plaintiffs brought three actions to recover money paid for certain oil and gas leases allegedly sold in violation of the Minnesota Securities Act.[1] The actions were consolidated for trial and also on this appeal. Plaintiffs appeal from summary judgments entered in favor of defendants.

The plaintiffs Merle O. and Margaret M. Anderson allege in their complaint (case No. 518224, hereinafter referred to as the Anderson case) that between April 15 and May 22, 1955, the defendants, Mikel Drilling Company and Oscar E. Chambers, its president, sold and conveyed to them an undivided fractional interest in two certain oil and gas leases and property in Oklahoma for the sum of $19,000. Said sales allegedly took place in the State of Minnesota

---

[1] M. S. A. 80.01, et seq.

in violation of the provisions of M. S. A. 80.30, which requires interests in oil or gas lands to be registered for sale with the Department of Commerce.[2] The complaint further alleges that the defendant Mikel Drilling Company is a Texas corporation authorized to do business in the State of Oklahoma but not in Minnesota. The defendant Chambers is alleged to be a resident of Oklahoma. For a second cause of action the plaintiffs allege that said sales were induced by certain fraudulent representations on the part of the defendants.

Substituted service of the summons and complaint was made under the provisions of § 80.14 by serving the Minnesota commissioner of securities. Thereafter the defendants moved to quash the service of the summons or in the alternative to dismiss the action on the ground that the court lacked jurisdiction, the defendants contending that there was no personal service upon them in Minnesota and that there had been no solicitation, offer to sell, or sale of the interests involved within the State of Minnesota. The motion was denied and the defendants thereafter answered, generally denying the allegations of the complaint and alleging that said sales were not solicited or made within the State of Minnesota.

In the second suit (case No. 522455, hereinafter referred to as the Thompson case) brought by James A. Thompson, Rose W. Thompson, and others against the Mikel Drilling Company, Midland Land and Development Company, Oscar E. Chambers, and Cliff Pierce,[3] it is alleged that the plaintiffs paid an aggregate of $50,000 for a fractional undivided interest in the same two oil and gas leases and land and that said sales were made in Minnesota in violation of the registration provisions of the Minnesota Securities Act.

The third suit (case No. 522454) was brought by the Thompsons, Andersons, and others against The Mikel Company and others to recover an aggregate of $20,137.50 paid for undivided interests in certain oil and gas leases and involving two tracts of Oklahoma property

[2]Sales made in violation of the Securities Act are void and the vendor is required to refund the money procured by such means. See, Drees v. Minnesota Petroleum Co. 189 Minn. 608, 250 N. W. 563.

[3]The appeal as to the defendant Cliff Pierce was dismissed by stipulation.

different from that involved in the first two actions. The complaint in the third action also alleges that said sales were made and conducted in Minnesota and in violation of the Securities Act. Answers to the second and third suits were filed generally denying the allegations of the complaints and alleging lack of jurisdiction.

After consolidation of these actions defendants filed a supplemental answer in all three cases setting up the defense of res judicata based upon a decision of the United States District Court[4] involving the same transactions and, with certain exceptions,[5] the same parties. The plaintiffs in the Thompson case then moved for leave to amend their complaint to include a second cause of action based on fraud and misrepresentation as in the Anderson case. The motion was denied on the ground that the substituted service authorized under § 80.14 is limited to actions based upon failure to register securities and does not extend to actions for damages for fraud or misrepresentation in the sale of securities.

Finally, the defendants in all three cases moved for summary judgment which was granted by the trial court.

■ A motion for summary judgment may be granted only if the movant has clearly sustained his burden of showing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law.[6] The primary basis of the trial court's decision, as set forth in its memorandum which was made a part of its order, is that the findings and judgment of the United States District Court act as an estoppel by verdict, or, as it is sometimes called, collateral estoppel, in the instant cases. Plaintiffs contend that there was

---

[4]George T. Collier v. Mikel Drilling Company, United States District Court, District of Minnesota, Fourth Division, civil action No. 5416 (May 1958).

[5]Walter P. Wolfe, a plaintiff in case No. 522454, and the Midland Land and Development Company, a defendant in cases No. 522455 and No. 522454, were not parties to the Federal suit.

[6]Rule 56.03 of Rules of Civil Procedure; Sauter v. Sauter, 244 Minn. 482, 70 N. W. (2d) 351; McCuller v. Workson, 248 Minn. 44, 78 N. W. (2d) 340.

neither a sufficient identity of issue nor of parties for the doctrine to be operative.

The doctrine of collateral estoppel applies when it affirmatively appears that the issue involved has already been litigated in a prior suit between the same parties, even though based upon a different cause of action, if the determination of such issue in the former action was necessary to the judgment.[7] The principle does not apply, however, to issues incidentally or collaterally decided.[8] The issue presented in the Federal case was whether the transactions were within the purview of the Securities Act of 1933, which exempts "transactions by an issuer not involving any public offering"[9] from the requirements of the act. M. S. A. 80.35, on the other hand, exempts "any isolated sale not made or occurring in the course of repeated or successive sales." Despite this difference in language, the defendants contend that collateral estoppel applies because the Federal court, in determining that there was no public offering, specifically found that each of the sales "was an isolated sale, an independent transaction which had no connection with any of the others; that said sales were not made for any common purpose and did not occur in the course of repeated and successive sales by the owner and issuer thereof * * *." In our opinion, however, this finding was not necessary to the Federal decision, and the doctrine of collateral estoppel does not apply.

While the purpose of the Minnesota statute, like the Federal act, is to protect the unwary investor against fraud,[10] the applicability of the exemption provisions in the two acts rests upon substantially different considerations. One of the most frequently cited decisions in-

---

[7]Hierl v. McClure, 238 Minn. 335, 56 N. W. (2d) 721; 10 Dunnell, Dig. (3 ed.) § 5162.

[8]See Restatement, Judgments, § 68, *comment o*, p. 309, which states: "Where the jury or the court makes findings of fact but the judgment is not dependent upon these findings, they are not conclusive between the parties in a subsequent action based upon a different cause of action."

[9]15 USCA, § 77d(1).

[10]Boyum v. Massachusetts Investors Trust, 215 Minn. 485, 10 N. W. (2d) 379; State v. Gopher Tire & Rubber Co. 146 Minn. 52, 177 N. W. 937.

terpreting exemption provisions such as found in our statute is Kneeland v. Emerton, 280 Mass. 371, 388, 183 N. E. 155, 163, 87 A. L. R. 1, 14:

"* * * The words 'repeated and successive' are used by way of contrast to the word 'isolated' employed earlier in the same sentence. In such context an 'isolated' sale means one standing alone, disconnected from any other, and 'repeated and successive' mean transactions undertaken and performed one after the other. We think that two sales of securities, made one after the other within a period of such reasonable time as to indicate that one general purpose actuates the vendor and that the sales promote the same aim and are not so detached and separated as to form no part of a single plan, would be 'repeated and successive transactions.' "[11]

Similarly, in Commonwealth v. Summons, 157 Pa. Super. 95, 98, 41 A. (2d) 697, 699, the court said:

"* * * where sales by an unregistered owner, though detached or separate, recur within such reasonable time as to indicate an association of acts under one general purpose, such sales are not 'isolated' but are within 'the course of repeated and successive transactions' prohibited by the act."

These definitions are manifestly sound and have previously been applied by our court.[12] Consequently, whether a transaction falls within the purview of our statutory exemption provision is determined by examining the relation of the transactions to each other in point of time and purpose.

These factors are not controlling in determining an exemption under the Federal statute. In Securities & Exchange Comm. v. Ralston Purina Co. 346 U. S. 119, 125, 73 S. Ct. 981, 984, 97 L. ed. 1494,

---

[11]Quoted with approval in Gales v. Weldon (Mo.) 282 S. W. (2d) 522, 526, and in Ersted v. Hobart Howry Co. 68 S. D. 111, 115, 299 N. W. 66, 68. In the Gales case, for example, the court noted that all of the sales were a part of the same general purpose and plan, i. e., to obtain the money required to drill and equip a well on the leased land.

[12]Virnig v. Smith, 252 Minn. 363, 90 N. W. (2d) 241; State v. Swenson, 172 Minn. 277, 215 N. W. 177, 54 A. L. R. 490.

1498, the United States Supreme Court held that the following standard was to be applied:

"* * * the applicability of § 4(1) should turn on whether the particular class of persons affected needs the protection of the Act. An offering to those who are shown to be able to fend for themselves is a transaction 'not involving any public offering.' "

This holding was construed in Gilligan, Will & Co. v. Securities & Exchange Comm. (2 Cir.) 267 F. (2d) 461, 466, as follows:

"* * * the governing fact is whether the persons to whom the offering is made are in such a position with respect to the issuer that they either actually have such information as a registration would have disclosed, or have access to such information."

Since the knowledge of the offerees or vendees, or their access to the information, is the controlling factor under Federal law, it follows that the finding of the Federal court regarding the "isolated" nature of the transactions was only incidental and not necessary to the judgment rendered in that case.[13]

In view of what has been said and the conclusion reached, we need not determine whether there was a sufficient identity of parties to permit the application of the doctrine of collateral estoppel.

■ It appears from the trial court's memorandum that its finding that each of the transactions involved was an "isolated sale" was not based upon the facts involved but rather upon the court's erroneous application of the doctrine of collateral estoppel. But in any event, the evidence presented on the motion for summary judgment is not sufficient to establish, as a matter of law, that the transactions were of such a nature as to fall within the exemption provision of the statute. The fact that the sales were made one after another within a relatively short period of time could give rise to an inference that

---

[13]The United States District Court also found that the plaintiffs "were able by reason of their ability and experience to fend for themselves in the oil business; that they were afforded a full opportunity to investigate the facts surrounding the investments which they made, and that they made such investments with full knowledge of such facts."

they were part of one general purpose. Evidence regarding the actual purpose motivating the sales and the relationship between the defendants is vague and inconclusive.

Similarly, defendants have not sustained their burden of showing that, as a matter of law, the sales took place solely in Oklahoma so as to be outside the purview of our Securities Act. The trial court specifically made no determination of this issue. It involves, among other things, the effect of various documents and payments transmitted by mail between the parties in Minnesota and Oklahoma. The record before us is inconclusive as to the existence and nature of these documents. According to defendants' own evidence, however, at least some of the assignments of the leases were delivered to the plaintiffs in Minnesota and payments transmitted to the defendants from Minnesota. Certain questions of statutory interpretation, not presented to nor considered by the trial court, might also be involved.[14]

It would not only be unfair but improper to the parties to attempt to resolve these issues upon the meager record before us. The function of the court on a motion for summary judgment is not to resolve issues of fact but to determine whether they exist.[15] Suffice it to say that a sufficient conflict as to the facts has been shown as to require their determination by a trial on the merits.

■ The trial court concluded that, in the absence of personal service on the defendants within the State of Minnesota, it lacked jurisdicion over plaintiffs' second cause of action in the Anderson case for fraud and misrepresentation. The issue was initially presented to the court in defendants' motion to dismiss for lack of jurisdiction, which was denied, and subsequently by plaintiffs' motion in the Thompson case to amend their complaint to include a similar second cause of action for fraud. The denial of this latter motion was considered by the trial court to have established the "law of the cases" and was the basis for

---

[14]For example, by reason of the amendment of M. S. A. 80.01, defining "sales" (L. 1955, c. 19, § 1), it is questionable whether § 80.30 now includes offers to sell and solicitations.

[15]Anderson v. Twin City Rapid Transit Co. 250 Minn. 167, 84 N. W. (2d) 593; 10 Dunnell, Dig. (3 ed.) § 4988b.

the granting of summary judgment in favor of the defendants as concerns the action for fraud in the Anderson case.

Plaintiffs in the Anderson case argue that since an order denying leave to amend is not appealable[16] the decision in the Thompson case did not become the law of the case and is of no binding effect on them. They urge that the defendants, having specially appeared to contest jurisdiction over their persons, thereafter submitted to the jurisdiction of the court by filing an answer and otherwise generally appearing in the action.

Since the appeals presently before us are from the judgments rendered, our permissible review extends to all intermediate orders involving the merits or affecting the judgment regardless of whether the orders are, in themselves, appealable.[17] Consequently, it is unnecessary for us to consider whether the trial court erred in its application of the doctrine of "law of the cases."[18]

The distinction between general and special appearances has, in effect, been abolished under Rule 12.02 of Rules of Civil Procedure, which provides in part:

"* * * No defense or objection is waived by being joined with one or more defenses or objections in a responsive pleading or motion."

It is now well settled that where the defense of lack of jurisdiction is timely asserted, it is not waived by proceeding with a trial on the

---

[16]Swanson v. Alworth, 157 Minn. 312, 196 N. W. 260.

[17]§ 605.09(1); see Cunningham, *Appealable Orders in Minnesota,* 37 Minn. L. Rev. 309, 315, 316, 325, where the author points out that in H. L. Spencer Co. v. Koell, 91 Minn. 226, 97 N. W. 974, the court erroneously concluded that failure to appeal from an appealable order rendered it the law of the case binding on appeal from the judgment.

[18]As used in this context, the expression "law of the case" merely refers to the practice of refusing to reconsider an issue sought to be reopened by motion or at the trial where it has been previously raised and disposed of by the trial court. See, 2 Moore, Federal Practice (2 ed.) par. 12.14. It does not preclude consideration of the matter on appeal, as is often the situation when the "law of the case" is used with reference to a prior appellate determination in the same case. See, 1 Dunnell, Dig. (3 ed.) § 398.

merits,[19] at least where a counterclaim is not involved.[20] Since the defendants here properly challenged the jurisdiction of the court by a motion to dismiss, their subsequent appearances did not constitute a waiver of the defense.

If the court has jurisdiction over the defendants in the fraud action, it must be derived from the authority of § 80.14 of the Securities Act relating to substituted service. This section, authorizing service on a nonresident by service on the commissioner of securities, becomes operative either (1) by the voluntary appointment of the commissioner for this purpose, or (2) by the commission of any act which constitutes a violation of the provisions of the Securities Act.[21] In the case of a voluntary appointment the commissioner is authorized to receive service of process "in any action or proceeding against such person or in which such person may be a party, in relation to or involving *any transaction* covered" by the act. (Italics supplied.)[22] However, an involuntary appointment is limited to proceedings "in relation to or involving *such violation*," i. e., the violation giving rise to the appointment. (Italics supplied.) The only violation here alleged is the defendants' failure to register the interests involved. The principal grounds of fraud asserted in both the Anderson case and the proposed action for fraud in the Thompson case are misrepresentations as to productive capacity and value. In our opinion an action involving such grounds is neither reasonably related to nor involved with the alleged violation by the defendants.[23]

[19]State ex rel. Adent v. Industrial Comm. 234 Minn. 567, 48 N. W. (2d) 42; Orange Theatre Corp. v. Rayherstz Amusement Corp. (3 Cir.) 139 F. (2d) 871; 2 Moore, Federal Practice (2 ed.) par. 12.12.

[20]See, Hook & Ackerman, Inc. v. Hirsh (D. D. C.) 98 F. Supp. 477.

[21]While the section specifically refers to violations of §§ 80.05 to 80.27, the provisions relating to the sale of oil and gas interests are incorporated by reference. See, § 80.33.

[22]As regards the scope of this provision, compare Thomes v. Atkins (D. Minn.) 52 F. Supp. 405, and Kaiser v. Butchart, 197 Minn. 28, 265 N. W. 826, with Boyum v. Massachusetts Investors Trust, 215 Minn. 485, 10 N. W. (2d) 379.

[23]But cf. Vogel v. Chase Securities Corp. (D. Minn.) 19 F. Supp. 564,

We conclude that the trial court properly denied plaintiffs' motion for leave to amend in the Thompson case. However, since the question of jurisdiction over the persons of the defendants operates by way of abatement, it cannot properly be disposed of by means of summary judgment which adjudicates the merits and operates in bar.[24] Therefore, in the Anderson case the trial court is directed to enter an order dismissing the second cause of action for want of jurisdiction.

The judgments are reversed and the causes remanded for further proceedings consistent with this opinion.

Reversed and remanded with directions.

---

where the alleged false representation was to the effect that the securities were registered under the state laws.

[24]Ziegler v. Akin (10 Cir.) 261 F. (2d) 88; Martucci v. Mayer (3 Cir.) 210 F. (2d) 259; 6 Moore, Federal Practice (2 ed.) par. 56.03.