George R. McNEILL, et al., Appellants,

v.

DAKOTA COUNTY STATE BANK, Respondent.

No. C3-94-844.

Court of Appeals of Minnesota.

Oct. 11, 1994.

Richard J. Harden, Richard J. Harden, P.A., Oakdale, for appellants.

Gary G. Fuchs, Elizabeth A. Lunzer, Campbell, Knutson, Scott & Fuchs, P.A., Eagan, for respondent.

Considered and decided by FORSBERG, P.J., and NORTON and SCHUMACHER, JJ.

## OPINION

NORTON, Judge.

In challenging summary judgment, appellants contend that respondent was not entitled to repossess collateral under *Cobb v. Midwest Recovery Bureau*, 295 N.W.2d 232 (Minn.1980). *Cobb* does not apply to this case because the bank did not accept late payment after the deadline set forth in its last demand letter. When McNeill failed to pay as requested, the bank was entitled to repossess the pledged collateral. We affirm.

## FACTS

On April 8, 1985, appellant George McNeill executed a promissory note and security agreement for a loan of $19,545.94 in favor of respondent Dakota County State Bank (the bank). This three-year installment promissory note called for 36 monthly payments and a final balloon payment of $8102.66 due April 20, 1988. As security for the loan, McNeill offered a 1979 East End trailer and a 1980 Ford pickup, among other items of collateral. On June 18, 1985, McNeill's sister Mildred Gittens[1] entered into a Third Party Pledge Agreement in which she gave the bank a security interest in a 1979 East End trailer No. DS0193661 as substitute collateral for the 1979 East End trailer No. DS0293719 which McNeill had pledged as collateral for the 1985 note.

On February 11, 1986, McNeill and Gittens took out a loan for $7052.51 for which they executed a 90–day single payment consumer demand note and security agreement in favor of the bank. Under the terms of this loan, McNeill and Gittens would make one single payment due May 12, 1986, in order to pay off the loan in its entirety. As collateral, the bank took a security interest in two 1977 Ashdown trailers, three other semi trailers, a 1977 Vulcan semi, a 1974 Peterbilt trailer, and a Michigan Clark four-wheel vehicle. In addition, the note contained the provision: "Property securing other loans with [bank] may also secure this loan."

From May 1985 to June 1986, McNeill and Gittens consistently made late payments on the 1985 promissory note. Similarly, they failed to make the one single payment of $7052.51 due May 12, 1986. As a result of these past-due accounts, the bank sent them letters demanding payment. The first letter, dated April 22, 1986, read:

> Confirming today's phone conversation, you will make a minimum payment of $1,200 on the large loan to give us more

---

1. Gittens died during the course of this lawsuit. Appellant McNeill has been appointed special administrator for her estate and has been substituted in to pursue Gittens' claims.

time to work with you or the loan will be in default and you will have to turn in the collateral covering that loan.

Would you please also provide us with insurance certificates on the 1979 and the 1980 Ford pickups, showing that you have insurance coverage for both.

This loan is seriously past due and we are trying to work with you. Please do whatever is necessary so that payment can be made.

Given the date of that letter and its reference to the "large loan," it appears that letter was in regard to the 1985 note. The second letter, also relating to the 1985 note, was dated May 14, 1986:

It has been 6 days since we last talked about getting a loan payment, still nothing has happened, and your loan is extremely past due.

We must receive $2,372.00 in the form of a cashiers check by May 21st or your loan will be totally called and due, and the entire balance of $19,547.12 will be due at that time.

If neither of these two things occur, please have all of your collateral in one location so we can pick it up. Sorry that this matter has come to this, but my hands are tied now.

Again, this letter is in reference to the 1985 note. The third letter, dated June 17, 1986, read:

Your monthly installments coming due February, March, April and May on your installment loan are past due. The default amounts to $1,922.00. Your 60 day note dated February 11, 1986 is also past due. The default amounts to $7,417.69. These two amounts totalling $9,339.69 must be paid by June 27, 1986.

In the event of any default beyond that date, or in the event that any future monthly installments [are] not paid when due, the bank, without any further notice, will pursue immediate legal action to foreclose its security interest in the property.

On June 19, 1986, Gittens paid the bank $1070. The bank applied $669.02 to the interest on the 1985 loan and $370.98 to the interest on the 1986 loan. This payment did not cure the default on either note. The parties agree that McNeill and Gittens made no further payments on either note after the June 19 payment.

When McNeill and Gittens failed to meet the June 27 deadline, respondent repossessed the 1979 East End trailer and the 1977 Ashdown trailer on July 18, 1986. The bank repossessed the 1980 Ford pickup truck on October 10, 1986. The bank sold these vehicles for a sum of $13,350 and applied the proceeds to satisfy the smaller 1986 note. The excess sale proceeds went to offset the balance on the 1985 note. The bank presented an exhibit to the district court which tabulated the running principal and interest balances on the 1985 note as of August 4, 1993. That balance was $22,899.54. The debt continues to accrue interest at $5.18 per day. The district court entered a deficiency judgment for the bank in these amounts.

## ISSUES

1. After the third letter demanding payment by a specific date and warning McNeill that a possible consequence would be foreclosure without notice, did the bank have a duty to notify McNeill again before repossessing the vehicles?

2. Did the district court err in awarding attorney fees, costs, and disbursements to the bank?

## ANALYSIS

### 1. Summary Judgment.

McNeill challenges summary judgment, arguing that a Minnesota Supreme Court decision should be dispositive of the case in his favor. *See Cobb v. Midwest Recovery Bureau Co.*, 295 N.W.2d 232, 237 (Minn.1980). On review of summary judgment, this court determines whether any issues of material fact exist and whether the district court erred in its application of the law. *Wartnick v. Moss & Barnett*, 490 N.W.2d 108, 112 (Minn.1992).

*Cobb* involved a debtor who habitually made late payments on his installment loan from the creditor. *Cobb*, 295 N.W.2d at 233–34. The creditor sent letters to the debtor

which threatened to terminate the financing agreement, but did not mention the consequence of repossession. *Id.* at 234. After numerous letters and two years of late payments, the creditor sent the debtor a letter with a final date for mandatory payment and a warning that, without at least one payment, the creditor would "have no other alternative than to terminate your financing agreement." *Id.* Despite the fact that the debtor did not make that mandatory payment until six weeks after the deadline, the creditor took no action against the debtor; indeed, it accepted the late payment without protest. *Id.* Ten weeks later, without any action against or notice to the debtor, the creditor repossessed the collateral. *Id.* The court held:

> [T]he repeated acceptance of late payments by a creditor who has the contractual right to repossess the property imposes a duty on the creditor to notify the debtor that strict compliance with the contract terms will be required before the creditor can lawfully repossess the collateral.

*Id.* at 237.

In determining that the creditor's conduct constituted wrongful repossession, the court reasoned:

> [T]he secured party is estopped from asserting his contract rights because his conduct has induced the justified reliance of the debtor in believing that late payments were acceptable.

*Id.* at 236. The court then cited the creditor's repeated acceptance of late payments and the assessment of late charges as evidence that the creditor had led the debtor to believe that late payments were permissible. *Id.* In crafting this rule, the court adopted the states' majority interpretation of U.C.C. § 9–503, codified in Minnesota at Minn.Stat. § 336.9–503 (1984). That statute ensures a secured party's right to take possession of collateral after the debtor has defaulted. *Id.* "In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action." *Id.*

The *Cobb* court focused on the last communication between debtor and creditor. The court stressed that, once the creditor has set the deadline, it may not waive that deadline by accepting a late payment and then seek to punish the late debtor by repossessing the collateral. *Cobb,* 295 N.W.2d at 237. The court noted:

> We recognize that this rule does place the creditor in a slightly worse position than the rule that repeated acceptance of late payments has no effect, because, if the creditor sends a letter to preserve its rights and then once again accepts late payments, another notice would be required. A second notice would be required because the acceptance of the late payment after the initial letter could again act as a waiver of the rights asserted in the letter.

*Id.*

■ *Cobb* is factually distinguishable and permits the repossession in this case. Although McNeill is similar to the debtor in *Cobb* because he has a similar history of consistently late payments, McNeill's history of late payment on the installment loan is immaterial. The focus is on whether or not he made a late payment *after June 27, 1986,* and whether or not the bank here accepted such a payment. Unlike the creditor in *Cobb,* respondent sent the June 17, 1986 letter that set forth the deadline of June 27 and the potential consequences of repossession if McNeill failed to comply. Unlike *Cobb,* McNeill made one partial payment on June 19, 1986, and made no payments thereafter; he tendered no payments and, consequently, the bank accepted no late payments after the June 27 deadline. Thus, although McNeill here had a history of late payments under the installment loan, he did not make a late payment in response to the June 17 letter. From the text of the letter, McNeill had full notice of the consequences of his default. Once the bank sent the June 17 letter with its deadline of June 27 and a warning of the consequences, the bank was entitled, under *Cobb,* to repossess the collateral without any further notice if McNeill defaulted.

This analysis resolves McNeill's claims for wrongful repossession under both the 1985 and 1986 loans. The *Cobb* analysis addresses specifically an installment loan such as McNeill's 1985 loan from the bank. Consequently, because the *Cobb* rule hinges upon a

creditor accepting late payments, the rule cannot apply to a single payment loan such as the 1986 loan. Although that loan was due in full on May 12, 1986, McNeill made no payments until after the third letter from the bank, and then made only partial payment which the bank apportioned between the interest owing on both notes. The June 17 letter, which addressed the default on both the 1985 and 1986 loans, stated, "These two amounts totalling $9,339.69 must be paid by June 27, 1986." The letter also forewarned McNeill of the likelihood of foreclosure in the event of default. Thus, even if the *Cobb* notification requirements did apply to the case involving a single-payment loan, the bank properly protected its interest because it sent the notification letter and accepted no late payment beyond the deadline date.

The district court properly determined that the bank had preserved its right to repossess the collateral and that *Cobb* does not preclude this result.

In its notice of review, the bank claims that an erroneous conclusion of law from the district court's July 15, 1992 order was never amended or vacated. In that order, the court concluded that, under *Cobb*, the bank "wrongfully repossessed the three vehicles" because it had failed to give appellants proper notice of repossession. Given our conclusion that *Cobb* does not prohibit repossession in this case, the district court's conclusion is clearly erroneous and must be vacated to avoid inconsistencies in the record.

## 2. Costs, Disbursements and Fees.

■ McNeill contends that equitable defenses protect him from deficiency judgment, attorney fees, costs and disbursements. We disagree on two grounds.

First, under Minnesota law, when a debtor defaults on a security agreement, the secured creditor may enforce the security interest by foreclosure, by reduction of the claim to judgment, or "by any available judicial procedure." Minn.Stat. § 336.9–501 (1984). In both the 1985 and 1986 security agreements, McNeill agreed that he would "be in default": if he failed "to make a payment on time or in the amount due"; if he failed "to pay, or keep any other promise, on any other loan or agreement I have with you"; if he did or failed "to do something which causes you to believe that you will have difficulty collecting that amount I owe"; or if "anything else happens which causes you to believe that you will have difficulty collecting the amount I owe." Furthermore, in the "obligations independent" provision, McNeill obligated himself to pay these notes and gave respondent the authority to sue him for collection. Finally, McNeill agreed to pay attorney fees, court costs, and collection costs "that result from my default" on both notes. McNeill agreed to these terms specifically. His default has given the bank the right to execute a judgment against him.

■ Second, the equitable doctrines of res judicata and collateral estoppel require a final judgment on a previous claim or issue in order to preclude relitigation. *See Hauser v. Mealey,* 263 N.W.2d 803, 806 (Minn.1978) (res judicata); *Anderson v. Mikel Drilling Co.,* 257 Minn. 487, 491, 102 N.W.2d 293, 297 (1960) (collateral estoppel). McNeill contends the district court's February 18, 1987 order in the replevin action was determinative of the bank's claim for the deficiency judgment. The 1987 order, however, merely vacated a prior order to show cause against McNeill. Although that order was the last one included in the replevin action, it did not finally dispose of the bank's claim. The district court in the current action properly determined that "there was no final judgment in the prior action and therefore no res judicata or collateral estoppel issue."

## DECISION

The *Cobb* decision is factually distinguishable and permits the repossession in this case where the bank sent a demand and warning letter that alerted McNeill of a payment deadline and potential consequences of default, McNeill failed to pay in full by the deadline date, he made no late payment, and the bank accepted no late payment after the deadline date. The district court properly determined that McNeill has defaulted and no issues of material fact exist over the deficiency judgment for the bank. Summary judgment was proper. We vacate the erro-

neous 1992 conclusion of law regarding wrongful repossession.

**Affirmed as modified.**