Arthur **PATTERSON**, Appellant,

v.

**WU FAMILY CORPORATION, d/b/a Nankin Cafe, Respondent,**

**John Doe, Respondent.**

No. C0–98–1961.

Court of Appeals of Minnesota.

June 15, 1999.

Stephen C. Fiebiger, Stephen C. Fiebiger & Associates, Chartered, Minneapolis, for appellant.

Sally J. Ferguson, Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Minneapolis; and Katherine L. MacKinnon, St. Louis Park, for respondents.

Considered and decided by HALBROOKS, Presiding Judge, PETERSON, Judge, and FOLEY, Judge.*

## OPINION

PETERSON, Judge

Appellant Arthur Patterson brought this action against respondent Wu Family Corporation, d/b/a Nankin Cafe, and respondent Henry Price, a bouncer for the Nankin, following an incident in which Price allegedly assaulted, battered, and discriminated against Patterson when Patterson failed to produce identification after being carded by Price. Patterson alleged the following causes of action: (1) violating the Minnesota Human Rights Act (MHRA) against the Nankin; (2) aiding and abetting the Nankin's violation of the MHRA against Price; (3) assault and battery against both respondents; (4) intentional and negligent infliction of emotional distress against both respondents; and (5) negligent supervision against the Nankin.

On appeal from a summary judgment in favor of respondents, Patterson argues that the district court erred in (1) granting summary judgment in favor of Price on the assault and battery claims based on ineffective service of the summons and complaint and (2) concluding that Patterson presented insufficient evidence to prove the essential elements of his claims for negligent and intentional infliction of emotional distress and negligent supervision. Patterson also argues that the district court erred in determining that Patterson's remaining claims against the Nankin were subject to a bankruptcy stay and, therefore, not properly before the district court. We affirm.

## FACTS

### Facts underlying merits

Patterson, a 39–year–old African American male, and three friends went to the Nankin for drinks. Price cleared their table and told them that they would have to get their own drinks from the bar because there was not a waiter or waitress in the area. Price did not request identification from Patterson at that time.

One of Patterson's friends brought drinks, including an alcoholic beverage for Patterson, to the table. Later, Price asked Patterson for identification. Patterson said that he did not have identification, and Price told Patterson that he had to

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

leave. Patterson testified that he agreed to leave and that, as he was walking out the door, Price grabbed his arm, twisted it behind his back, and pushed him out of the Nankin. Patterson testified that he feared harm from Price because Price was very aggressive.

Patterson testified that following the incident at the Nankin, he suffered from muscle strain in his arm, neck, and back. Sometime after the incident at the Nankin, Patterson developed high blood pressure. His doctors were unable to determine the cause of his high blood pressure. Patterson submitted medical records showing that following the incident at the Nankin, he complained to medical personnel that he suffered from dizziness, sweating, and headaches. Patterson claims that as a result of the incident at the Nankin, he developed a phobia about being in public places. Patterson did not seek any psychological treatment or counseling for his phobia.

**Facts underlying ineffective service defense**

Because Patterson did not know the bouncer's identity, he initially brought this action against the Nankin and John Doe. In early August 1997, in unexecuted answers to interrogatories, the Nankin identified the bouncer as Price and listed his address as 7001 Valley View Road, Edina, MN. On August 21, 1997, Patterson attempted to serve the summons and complaint on Price by leaving a copy of the documents with an unidentified male at the Valley View Road address provided by the Nankin. On August 28, 1997, Patterson granted Price an extension of time to answer the complaint until September 16, 1997. Price's answer did not raise the defense of insufficient service of process. On October 2, 1997, Price served on Patterson an amended answer raising the defense of insufficient service of process.

Price testified in a deposition taken November 7, 1997, that he had lived at 6053 Dupont Avenue South, Minneapolis, MN, since August 1996. His parents lived at the address where Patterson attempted to serve Price with the summons and complaint. Price testified that he obtained a copy of the complaint when he found it on his parents' driveway. He testified that he had read the complaint before the deposition. At the deposition, Patterson's attorney gave Price a copy of the summons and complaint, which was a deposition exhibit, to examine for the purpose of determining whether Price had previously seen the documents. The record does not indicate that Patterson's attorney gave Price a copy of the summons and complaint to keep. At the deposition, Price answered questions about his job as a bouncer for the Nankin and the incident with Patterson. Price did not require a subpoena but rather appeared voluntarily for the deposition, and he was represented by two attorneys.

In November 1997 and January 1998, Price was represented by counsel at witness depositions. In early 1998, Price and the Nankin filed a motion for partial summary judgment on Patterson's claims for aiding and abetting violations of the MHRA and intentional and negligent infliction of emotional distress. At the hearing on the motion, Price raised the ineffective service defense. On February 13, 1998, the district court filed an order granting respondents' motion for partial summary judgment. In a memorandum, the district court explained that it dismissed the claim against Price for aiding and abetting violations of the MHRA because it was time-barred and the claims for intentional and negligent infliction of emotional distress because Patterson failed to present sufficient evidence to prove the elements of those claims. The district court did not address Price's ineffective service defense in either its order or memorandum.

On March 2, 1998, Patterson attended and participated in court-ordered arbitration. On March 6, 1998, the two-year statute of limitations expired for Patterson's assault and battery claims against Price. After the district court placed the case on

the trial calendar in April 1998, Price's attorney took the depositions of three witnesses. On April 20, 1998, Price filed a motion to dismiss the assault and battery claims on the ground that the summons and complaint had not been properly served on him. The district court granted Price's motion.

## ISSUES

I.  Did the district court err in dismissing the assault and battery claims against Price for ineffective service of process?

A.  Did the district court err in determining that service was ineffective?

B.  Did the district court err in determining that Price had not waived the ineffective service defense?

C.  Should Price be estopped from asserting the ineffective service defense?

D.  Did the district court err in granting the motion when Price did not file the motion until after the deadline for dispositive motions?

II.  Did the district court err in concluding that Patterson failed to present sufficient evidence to withstand summary judgment on his claims for intentional and negligent infliction of emotional distress?

III.  Is the issue of whether the district court erred in concluding that Patterson's claims against the Nankin for violating the MHRA and for assault and battery were subject to the bankruptcy stay properly before this court?

IV.  Did the district court err in granting summary judgment on the negligent supervision claim against the Nankin?

## ANALYSIS

On appeal from a summary judgment, this court must review the record to determine whether any genuine issues of material fact exist and whether the district court erred in applying the law. *In re Estate of Palmen*, 588 N.W.2d 493, 495 (Minn.1999). We must view the evidence in the light most favorable to the nonmov-

ing party. *Id.* The nonmoving party, however,

cannot rely on the pleadings alone to defeat a summary judgment motion but instead must produce specific facts which establish the existence of a genuine issue for trial.

*Krogness v. Best Buy Co., Inc.*, 524 N.W.2d 282, 285 (Minn.App.1994), *review denied* (Minn. Jan. 25, 1995).

[S]ummary judgment on a claim is mandatory against a party who fails to establish an essential element of that claim, if that party has the burden of proof, because this failure renders all other facts immaterial.

*Lloyd v. In Home Health, Inc.*, 523 N.W.2d 2, 3 (Minn.App.1994).

### I.

### A.

■■ Minn. R. Civ. P. 4.03 provides that a summons shall be served

[u]pon an individual by delivering a copy to the individual personally or by leaving a copy at the individual's usual place of abode with some person of suitable age and discretion then residing therein.

"Service of process in a manner not authorized by the rule is ineffective service." *Tullis v. Federated Mut. Ins. Co.*, 570 N.W.2d 309, 311 (Minn.1997).

■■ The district court found that leaving the summons with someone at Price's parents' residence at 7001 Valley View Road, Edina, MN, did not comply with Minn. R. Civ. P. 4.03 because that was not Price's usual place of abode on August 21, 1997. The location of a person's usual place of abode is a fact question, and this court will not reverse the district court's determination unless clearly erroneous. *Peterson v. Eishen*, 495 N.W.2d 223, 225 (Minn.App.1993), *aff'd*, 512 N.W.2d 338 (Minn.1994).

■■ Usual place of abode

means one's fixed place of residence for the time being. In such connection

'abode' and 'residence' may be synonymous. But ordinarily 'usual place of abode' is a much more restricted term than 'residence,' and means the place where the defendant is actually living at the time when service is made. The purpose of the use of the term in an act relating to the service of process has primary reference to the place where the defendant is usually to be found. Therefore 'usual place of abode' means 'present place of abode.'

*Holtberg v. Bommersbach*, 236 Minn. 335, 337, 52 N.W.2d 766, 768 (Minn.1952) (quoting *Berryhill v. Sepp*, 106 Minn. 458, 459–60, 119 N.W. 404, 404–05 (1909)) (citations omitted).

Patterson argues that 1995 employment and tax records showed that Price's usual place of abode was his parents' residence. But evidence that Price lived at his parents' residence in 1995 does not demonstrate that he still lived there in 1997. At an April 1997 interview with a Safeco Insurance adjuster, Price stated that his address was 7001 Valley View Road, Edina, but his mother interrupted to explain that Price did not live at his parents' residence but at another house owned by his parents. Price testified that he had lived at 6053 Dupont Avenue South, Minneapolis, since August 1996. Price's brother, who lived at his parents' residence, stated in an affidavit that Price had not resided at that residence since at least sometime in 1996.

The evidence was sufficient to support the district court's finding that Price's parents' residence was not his usual place of abode on August 21, 1997. *See Hengel v. Hyatt*, 312 Minn. 317, 318–19, 252 N.W.2d 105, 105–06 (Minn.1977) (when defendant testified regarding the location of her usual place of abode, district court did not err in finding that her father's home was not her usual place of abode); *Peterson*, 495 N.W.2d at 225 (affirming district court's finding that address listed in official records was not defendant's usual place of abode when three people with personal knowledge submitted affidavits stating that defendant lived at a different location).

Patterson also argues that Price was validly served at his deposition on November 7, 1997, when Patterson's attorney gave Price a copy of the summons and complaint to examine for the purpose of determining whether Price had previously seen the documents. Minn. R. Civ. P. 4.03 permits a summons to be served "by delivering a copy to the individual personally." The plain meaning of deliver is to surrender something to another. *See The American Heritage Dictionary* 494 (3d ed.1992) (definition of deliver). An item is not surrendered to another when it is given with the expectation that it will be immediately returned. We find no authority indicating that giving an individual a copy of a summons and complaint to examine briefly constitutes valid service under Minn. R. Civ. P. 4.03. The record does not show that Price was given a copy of the summons and complaint to keep and, therefore, does not support a finding that Price was validly served at his deposition.

Patterson argues that even if Price was not validly served under Minn. R. Civ. P. 4.03, he was subject to the district court's jurisdiction because he had actual notice of the lawsuit. Actual notice of a lawsuit will not subject a defendant to personal jurisdiction absent substantial compliance with Minn. R. Civ. P. 4.03. *Tullis*, 570 N.W.2d at 311. The actual notice exception has only been applied in cases involving substitute service at a defendant's usual place of abode. *Thiele v. Stich*, 425 N.W.2d 580, 584 (Minn.1988); *Coons v. St. Paul Cos.*, 486 N.W.2d 771, 774 (Minn.App.1992), *review denied* (Minn. July 16, 1992).

Patterson cites *Larson v. Hendrickson*, 394 N.W.2d 524, 526 (Minn.App.1986), in which this court stated that "[w]hen actual notice of the action has been received by the recipient, 'the rules governing such service should be liberally construed.'" In *Larson*, however, the summons and com-

plaint were served at the defendant's usual place of abode. *Id.*; *see also Blaine v. Anoka–Hennepin Indep. Sch. Dist. No. 11*, 498 N.W.2d 309, 314–15 (Minn.App.1993) (interpreting *Larson* quotation), *review denied* (Minn. June 22, 1993). Because service was not made at Price's usual place of abode, the actual notice exception does not apply to this case.

### B.

■■■■ Proper service of process is necessary to confer personal jurisdiction on the district court. *Blaine*, 498 N.W.2d at 312; *see also Amdahl v. Stonewall Ins. Co.*, 484 N.W.2d 811, 814 (Minn.App.1992), *review denied* (Minn. July 16, 1992) (determination of whether summons and complaint were properly served is a question of personal jurisdiction). The existence of personal jurisdiction is a question of law subject to de novo review. *Hughs ex rel. Praul v. Cole*, 572 N.W.2d 747, 749 (Minn. App.1997).

> Generally, an improperly served defendant submits to the court's jurisdiction "only where the defendant has taken some affirmative step invoking the power of the court or implicitly recognizing its jurisdiction."

*Larson v. New Richland Care Ctr.*, 520 N.W.2d 480, 482 (Minn.App.1994) (quoting *Peterson v. Eishen*, 512 N.W.2d 338, 340 (Minn.1994)).

■■■■ Price requested an extension of time to answer, but merely requesting an extension of time to answer does not invoke the court's power or recognize its jurisdiction. *Larson*, 520 N.W.2d at 482. Price first asserted the ineffective service defense in a timely amended answer. *See* Minn. R. Civ. P. 15.01 (when no responsive pleading is permitted, party may amend a pleading once as a matter of course at any time within 20 days after the pleading is served). After asserting the ineffective service defense, Price participated in this action by voluntarily attending his own deposition with his attorney, filing a summary judgment motion, participating in a

court-ordered arbitration, issuing notices and subpoenas for depositions of witnesses, and requesting accommodations in the scheduling of the trial date. Throughout his participation, Price continued to assert the ineffective service defense.

■■■■ Once a defendant asserts a lack of personal jurisdiction defense, he does not waive it by then participating in the action. *See Anderson v. Mikel Drilling Co.*, 257 Minn. 487, 495–96, 102 N.W.2d 293, 300 (Minn.1960) (timely asserted lack of jurisdiction is not waived by proceeding with trial on the merits); *Johnson Bros. Corp. v. Arrowhead Co.*, 459 N.W.2d 160, 162 (Minn.App.1990) (defendant who challenged personal jurisdiction did not waive defense by subsequently participating in discovery and asserting cross claims); *Wilkie v. Allied Van Lines, Inc.*, 398 N.W.2d 607, 611 (Minn.App.1986) (appearances following proper challenge to court's jurisdiction did not constitute waiver of defense) (citing *Calloway v. National Servs. Indus., Inc.*, 93 A.D.2d 734, 735, 461 N.Y.S.2d 280 (N.Y.App.Div.1983)) (reversing trial court's finding of implied waiver of jurisdictional defense after six years and seven motions to compel discovery), *aff'd*, 60 N.Y.2d 906, 470 N.Y.S.2d 583, 458 N.E.2d 1260 (1983); *Danielson v. Brody Seating Co.*, 71 Wis.2d 424, 238 N.W.2d 531, 535 (1976) ("If a defendant has properly raised his objection to jurisdiction in his answer, he may later take part in pretrial discovery or otherwise contest the merits of the action without waiving his objections to personal jurisdiction.").

This case differs from *Mississippi Valley Dev. Corp. v. Colonial Enters., Inc.*, 300 Minn. 66, 217 N.W.2d 760 (1974), a case relied on by Patterson. In that case, the defendant raised an ineffective service defense after participating in the action by requesting extensions of time within which to move or answer, filing a motion to compel arbitration, appealing the denial of that motion, and obtaining court approval of a bond. *Id.* at 761–62. In contrast, Price's

participation in this lawsuit before raising the ineffective service defense was limited to requesting an extension of time to answer, an action that does not waive an ineffective service defense. *See Larson,* 520 N.W.2d at 482 (requesting an extension of time to answer does not invoke the court's power or recognize its jurisdiction).

Patterson also relies on *Federal–Hoffman, Inc. v. Fackler,* 549 N.W.2d 93 (Minn.App.1996), *review denied* (Minn. Aug. 20, 1996). In *Fackler,* this court modified the rule that a party waived a personal jurisdiction defense by asserting a counterclaim. *Id.* at 95. The *Fackler* court held that a party does not waive a personal jurisdiction defense by asserting a counterclaim but that, to preserve a personal jurisdiction defense after asserting a counterclaim in its answer, the party must promptly move to have the personal jurisdiction issue decided. *Id.* at 95. We decline to extend the *Fackler* rule to this case because Price did not assert a counterclaim.

Price asserted his insufficient service defense in a timely amended answer, and he did not waive it by subsequently participating in this lawsuit.

### C.

■ Patterson argues that Price should be estopped from asserting an ineffective service defense. The district court has discretion to grant equitable relief, and its decision will not be reversed absent a clear abuse of discretion. *Nadeau v. County of Ramsey,* 277 N.W.2d 520, 524 (Minn.1979). The essential elements of equitable estoppel include (1) a misrepresentation or concealment of material facts; (2) the party claiming the benefit of the estoppel does not know the truth regarding those facts; and (3) detrimental reliance by the party asserting the estoppel. *Olson v. Ronhovde,* 446 N.W.2d 690, 692–93 (Minn.App.1989).

■ Patterson argues that Price should be estopped from asserting an ineffective service defense because the Nankin incorrectly listed Price's address in its executed answers to interrogatories served in January 1998. We disagree. Patterson already knew Price's correct address when the Nankin served its answers because Price had provided it to Patterson during Price's November 1997 deposition.

■ Patterson also argues that Price should be estopped from asserting an ineffective service defense because Price gave conflicting stories regarding the attempted service at his parents' residence. In one version, Price said someone found the summons and complaint in the driveway. In the other, Price and his brother said the summons and complaint were thrown into his parents' residence. This discrepancy was minor, and Patterson does not claim any reliance on one version over the other. The district court did not err in declining to award Patterson equitable relief.

### D.

■ A scheduling order "shall be modified only to prevent manifest injustice." Minn. R. Civ. P. 16.05. In determining whether to relieve a party of the obligations of a scheduling order, the court applies a balancing approach, considering factors such as the degree of prejudice to the parties seeking and opposing modification, the impact of the modification, and the degree of willfulness, bad faith, or inexcusable neglect on the part of the party seeking modification. *Cotroneo v. Pilney,* 343 N.W.2d 645, 649 (Minn.1984); *Bohdan v. Alltool Mfg. Co.,* 411 N.W.2d 902, 905 (Minn.App.1987), *review denied* (Minn. Nov. 13, 1987).

■ The district court's scheduling order required dispositive motions to be filed by February 16, 1998. In April 1998, about one month after the statute of limitations expired for Patterson's assault and battery claims against Price, the district court granted Price leave to bring a motion to dismiss those claims based on ineffective service.

Patterson argues that he was prejudiced by Price's failure to bring the motion by the February 16 deadline because at that time, Patterson could have re-served the summons and complaint and preserved his assault and battery claims against Price. Price first asserted his ineffective service defense in his October 1997 amended answer and continued to assert it consistently thereafter. Price specifically raised the defense at the February 13, 1998, hearing on respondents' motion for partial summary judgment. Patterson knew Price's correct address by November 7, 1997, and could have re-served the summons and complaint at any time after that. The facts that Patterson knew Price was asserting an ineffective service defense and could easily have prevented the loss of his assault and battery claims by re-serving the summons and complaint significantly undercuts Patterson's prejudice claim. The district court did not err in granting Price leave to file his dismissal motion.

Patterson also argues that he was prejudiced by Price's failure to comply with the 28–day notice requirement for dispositive motions under Minn. R. Gen. Pract. 115.03(a) and the 10–day notice requirement for summary judgment motions under Minn. R. Civ. P. 56.03. The argument is not persuasive. Patterson had sufficient notice of the ineffective service defense because Price consistently asserted it beginning in October 1997 and specifically raised it at the February 13, 1998, hearing. Moreover, Patterson does not explain how compliance with the notice requirements of Minn. R. Gen. Pract. 115.03(a) and Minn. R. Civ. P. 56.03 could have prevented the dismissal of his assault and battery claims.

## II.

An essential element of a claim for intentional infliction of emotional distress is that defendant's conduct caused severe emotional distress, and the burden of proof is on the plaintiff. *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 438–39 (Minn.1983). An essential element of a claim for negligent infliction of emotional distress is that defendant's conduct caused emotional distress, and the burden of proof is on the plaintiff. *Soucek v. Banham*, 503 N.W.2d 153, 164 (Minn.App. 1993).

Patterson claims that, following the incident at the Nankin, he suffered from a phobia about being in public places, high blood pressure, dizziness, sweating, and headaches. Patterson did not present any testimony by a medical expert linking any of these symptoms to the incident at the Nankin. Expert medical testimony is required to establish causation when the question involves medical factors beyond the knowledge of the average layperson. *Gross v. Victoria Station Farms, Inc.*, 578 N.W.2d 757, 762 (Minn.1998). Establishing a causal connection between Price's conduct and Patterson's symptoms required an understanding of medical factors beyond that of the average layperson. *See Bohdan*, 411 N.W.2d at 908 (affirming summary judgment on intentional infliction of emotional distress claim when plaintiff failed to produce evidence linking paranoid disorder to defendant's conduct). The district court properly granted summary judgment in favor of respondents on Patterson's claims for intentional and negligent infliction of emotional distress based on Patterson's failure to present sufficient evidence to prove causation. *See Lloyd*, 523 N.W.2d at 3 (summary judgment mandatory against a party who fails to establish an essential element on which that party has the burden of proof).

## III.

When no objection to an alleged error is raised before the district court, the alleged error cannot be considered on appeal. *Park Hill Apartments v. Anderson*, 409 N.W.2d 924, 925 (Minn.App. 1987).

During the May 13, 1998, hearing, the district court stated:

We spent time this afternoon discussing the bankruptcy stay and the coverage that—that Safeco Insurance provides under the policy, and we were both—we got a copy of a letter sent to us. Both counsel had a chance to review it, and we discussed in chambers the letter, and I think everybody is in agreement at this point that the only claim that is permitted by the federal bankruptcy stay would be the negligent supervision against the [Nankin]. Is that—on that part of it is that an accurate summary of where we are from [Patterson's] perspective Mr. Fiebiger?

Stephen Fiebiger, Patterson's counsel, responded, "I think it is, Your Honor." At the end of the hearing, Fiebiger stated that Patterson objected to the grant of summary judgment on the negligent supervision claim but did not indicate that Patterson objected to the determination that the MHRA and assault and battery claims were subject to the bankruptcy stay.

Fiebiger contends on appeal that he only intended to agree that the district court had advised counsel of its determination regarding the bankruptcy stay and did not intend to agree with the substance of the district court's decision. Fiebiger's agreement on the record, however, considered in light of the district court's comments, indicates that he agreed that the MHRA and assault and battery claims against the Nankin were subject to the bankruptcy stay. The record does not show that Fiebiger agreed only that the district court had advised him of its decision. Because the record does not indicate that Patterson raised an objection before the district court to its decision that only the negligent supervision claim is permitted by the bankruptcy stay, any alleged error in the decision cannot be considered on appeal.

**IV.**

On May 13, 1998, the day trial was scheduled to start, the district court granted the Nankin summary judgment sua sponte on Patterson's negligent supervision claim.[1] Patterson argues that the district court acted improperly in failing to give him prior notice that the claim might be decided on summary judgment. The record, however, does not show that Patterson was prejudiced by the lack of notice. At the May 13 hearing, his attorney had the opportunity to explain the evidence that Patterson intended to present, and the district court permitted him to include in the district court record the depositions of the witnesses who would have testified in his favor. Because Patterson has not established prejudice, the lack of notice is not a ground for reversal. *See Bloom v. Hydrotherm, Inc.*, 499 N.W.2d 842, 845 (Minn.App.1993).

Regarding the merits, [t]o prevail on a claim of negligent supervision, a plaintiff must prove that the employee's conduct was foreseeable and that the employer failed to exercise ordinary care when supervising the employee.

*Oslin v. State*, 543 N.W.2d 408, 415 (Minn. App.1996), *review denied* (Minn. Apr. 1, 1996). Generally, physical injury is required to support a claim of negligent supervision. *Bruchas v. Preventive Care, Inc.*, 553 N.W.2d 440, 443 (Minn.App.1996).

Patterson argues that the district court erred in concluding that the evidence was insufficient to prove that Price's physical assault on Patterson was foreseeable. Price admitted previously forcibly escorting a customer from the Nankin and being involved in a physical altercation with another customer. But the record does not indicate that Price's conduct was unwarranted in those incidents. Angela Burchett testified that, on more than one occasion before the incident with Patterson,

1. Although the district court called its disposition of the negligent supervision claim a directed verdict, it is properly characterized as a summary judgment because it was decided before any evidence was presented. *See DLH, Inc. v. Russ*, 566 N.W.2d 60, 70 (Minn.1997) (explaining difference between summary judgment and directed verdict).

she had seen Price hassle African American customers by requesting identification from them. Anthony Hines testified that he had seen Price question African Americans and grab them if they did not give the correct answer, but Hines could not recall specific details about the prior incidents. Absent evidence that Price had used excessive physical force on previous occasions, the district court properly granted summary judgment on the negligent supervision claim.

Patterson filed a motion to strike the following documents from the appendix to respondents' brief: the district court's order granting respondents' motion to supplement the record; the letter added to the record by the district court's order; and documents filed in the district court in connection with respondents' motion to supplement. Minn. R. Civ.App. P. 110.05 authorizes the district court to supplement the record when the record does not conform to what occurred in the district court. The record shows that the letter added to the record was considered by the district court in deciding what claims were subject to the bankruptcy stay. We, therefore, deny Patterson's motion to strike.

### DECISION

The district court did not err in dismissing the assault and battery claims against Price for ineffective service. The district court properly granted summary judgment in favor of respondents on Patterson's claims for negligent and intentional infliction of emotional distress and in favor of the Nankin on Patterson's claim for negligent supervision. The issue of whether the district court erred in determining that Patterson's claims against the Nankin for violating the MHRA and for assault and battery were subject to the bankruptcy stay is not properly before this court. We deny Patterson's motion to strike.

**Affirmed; motion to strike denied.**