Douglas J. McKENZIE, Plaintiff,

v.

LUNDS, INC., a/k/a Lunds Food Holdings, Inc., Defendant.

No. Civ. 98-54 JRT/RLE.

United States District Court, D. Minnesota.

Sept. 15, 1999.

---

Frederick Leonard Neff, Theresa Ann Freeman, Neff Law Office, Bloomington, MN, for Douglas J McKenzie.

Douglas R Christensen, Dorsey & Whitney, Minneapolis, MN, Linda M Mealey-

Lohmann, Mealey-Lohmann Law Office, Woodbury, MN, for Lunds, Inc.

## ORDER ADOPTING REPORT AND RECOMMENDATION

TUNHEIM, District Judge.

Based upon the Report and Recommendation of United States Magistrate Judge Raymond L. Erickson, and after an independent review of the files, records and proceedings in the above-titled matter, **IT IS HEREBY ORDERED:**

That the Defendant's Motion for Summary Judgment [Docket No. 16] is **GRANTED.**

LET JUDGMENT BE ENTERED ACCORDINGLY.

## REPORT AND RECOMMENDATION

### Aug. 23, 1999

ERICKSON, United States Magistrate Judge.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(B), upon the Defendant's Motion to Dismiss or, in the alternative, for Summary Judgment. A Hearing on the Motion was conducted on November 17, 1998, at which time, the Plaintiff appeared by Theresa A. Freeman, Esq., and the Defendant appeared by Douglas R. Christensen, Esq.

For reasons which follow, we recommend that the Defendant's Motion for Summary Judgment[1] be granted.

[1]. As envisioned by the last sentence of Rule 12(b), Federal Rules of Civil Procedure when a Motion to Dismiss, for failing to state a claim upon which relief can be granted, is submitted to the Court together with materials outside the pleadings, and when, as here, the Court considers those materials, the Motion is to be treated as one for Summary Judgment under Rule 56, Federal Rules of Civil Procedure. See *Rule 12(b), Federal*

### II. *Factual and Procedural History*

The Plaintiff is an employee of the Defendant, which is a grocer with several retail outlets in the Minneapolis metropolitan area. He has worked as a meat cutter for the Defendant for sixteen years. On January 10, 1997, the Plaintiff's employment was terminated for "unacceptable behavior and performance." Thereafter, he filed a grievance with his labor union, which challenged his termination, and which requested that the matter be submitted to arbitration. An Arbitration Hearing was conducted on May 15, 1997. Both the Plaintiff and the Defendant were represented by counsel throughout the pendency of the arbitration proceedings. On July 9, 1997, the Arbitrator reinstated the Plaintiff with back pay, but determined that a 30–day suspension, without pay, was warranted. Prior to the issuance of the Arbitrator's decision, the Plaintiff, on June 6, 1997, filed a Charge of age discrimination, which related to his being disciplined, and discharged, by the Defendant, with the Equal Employment Opportunity Commission ("EEOC"), and which was cross-filed with the Minnesota Department of Human Rights ("MDHR"). *Defendant's Exhibits AA, BB.* On October 16, 1997, the EEOC issued a right-to-sue letter to the Plaintiff concerning his Charge of age discrimination. *Defendant's Exhibit CC.* On January 12, 1998, the MDHR issued a right-to-sue letter to the Plaintiff with respect to the same asserted acts of the Defendant.

On that same day—January 12, 1998—the Plaintiff filed a Complaint in this Court. *Defendant's Exhibit EE.* The Complaint alleged a violation of Title VII

*Rules of Civil Procedure; Deuser v. Vecera,* 139 F.3d 1190, 1191 n. 3 (8th Cir.1998); *Chantal v. United States,* 104 F.3d 207, 209 (8th Cir. 1997). Since we have considered the wealth of materials, that were submitted by the parties in support of, or in opposition to, the Motion under review, we necessarily construe the Defendant's Motion as one for Summary Judgment.

of the Civil Rights Act of 1964 (as amended by the Equal Employment Opportunity Act of 1972) ("Title VII"), Title 42 U.S.C. § 2000e–5. In conjunction with his Complaint, the Plaintiff also filed an Application to Proceed *in forma pauperis.* [Docket No. 2].

On January 14, 1998, the Plaintiff filed an "amended" Charge of discrimination with the EEOC, which was cross-filed with the MDHR. *Defendant's Exhibits FF, HH.* In his Amended Charge, the Plaintiff alleged, for the first time, that he had been the subject of harassment, and discrimination, based upon his age, disability, and recovering alcoholic status, in violation of the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), and Title VII. On January 21, 1998, the EEOC issued a right-to-sue letter in connection with the Plaintiff's Amended Charge of discrimination. *Defendant's Exhibit GG.*

As part of this Court's regular duties, and pursuant to Title 28 U.S.C. § 1915, the Court issued an Order dated January 27, 1998, in which it identified that, as it was then constituted, the Plaintiff's Complaint failed to satisfy the "notice pleading" requirements of Rule 8(a), Federal Rules of Civil Procedure. *Order of January 27, 1998* [Docket No. 3]. In addition to identifying the inadequacies of the Plaintiff's pleadings, and granting him until February 20, 1998, by which to correct those deficiencies, our Order expressly directed the Clerk of Court *not* to submit the Summons and Complaint to the United States Marshal's Service, for execution upon the Defendant, until further Order of the Court. *Id.* at 4.

Thereafter, on February 20, 1998, the Plaintiff filed an Amended Complaint, alleging violations of the ADEA, ADA, the MHRA, as well as certain State common law claims. *Amended Complaint* [Docket No. 7]. Upon reengaging our review of the Plaintiff's application for pauper standing, following the filing of the Amended Complaint, we concluded that the Plaintiff was not entitled to such standing, and made that recommendation to the District Court, the Honorable John R. Tunheim presiding. *Report and Recommendation of February 25, 1998* [Docket No. 8]. We also issued an Order, of even date, which continued our directive that a Summons not issue until further Order of the Court. *Order of February 25, 1998* [Docket No. 8]. By Order dated March 30, 1998, the District Court adopted our Report and Recommendation, and denied the Plaintiff pauper standing. *Order of March 30, 1998* [Docket No. 9].

On April 4, 1998,[2] the Clerk of Court docketed the receipt of a filing fee from the Plaintiff, and we directed the Clerk of Court to issue a Summons to the Plaintiff for service upon the Defendant. *Order dated April 6, 1998* [Docket No. 10]. To date, the Plaintiff's original Complaint has never been served upon the Defendant. Unfortunately, the Amended Summons and Complaint were delivered to the reception area of the Dorsey & Whitney law firm, on April 9, 1998, and were addressed to Douglas Christensen, Esq., who had represented the Defendant in the arbitration proceedings that involved the Plaintiff. *Christensen Affidavit* ¶ 3. The Defendant interposed its Answer on April 29, 1998, [Docket No. 11], in which it expressly asserted the affirmative defense of insufficiency of process and/or insufficiency of service of process. *Answer to Amended Complaint, Fourth Defense,* at 14.

On June 4, 1998, the MDHR issued a right-to-sue letter with respect to the

---

2. While not wholly clear, it appears that the Plaintiff paid a filing fee on or about March 4, 1998, but that receipt was not effected until the District Court issued its Order adopting the Report and Recommendation. In the future, we would advise counsel for the Plaintiff that, if counsel does not contest a Report and Recommendation, then the interests of a "just, speedy, and inexpensive" progression to Trial would commend a notification to the District Court in order to obviate that Court's obligation to review the Report and Recommendation *de novo.*

Plaintiff's discrimination Charge of January 14, 1998. Thereafter, on August 12, 1998, after the Plaintiff was informed by the Defendant, at the parties' Rule 26(f) Conference, that service had never been effected upon the Defendant, the Plaintiff properly served his Amended Complaint upon the Defendant. *Laska Affidavit* ¶ 4; *Christensen Aff.* ¶ 8. On October 6, 1998, the Defendant filed his present dispositive Motion, which challenges the claims, that have been asserted in the Plaintiff's Amended Complaint, on both procedural and substantive grounds.

### III. *Discussion*

A. *Standard of Review.* Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the non-moving party, and we have found no triable issue. *Carter v. St. Louis Univ.,* 167 F.3d 398, 400 (8th Cir.1999); *Prudential Ins. Co. v. National Park Med. Center, Inc.,* 154 F.3d 812, 818 (8th Cir.1998). For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a verdict for the non-moving party. See, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Liebe v. Norton,* 157 F.3d 574, 578 (8th Cir.1998); *Dodd v. Runyon,* 114 F.3d 726, 729 (8th Cir.1997).

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute. In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial." *Rule 56(e), Federal Rules of Civil Procedure;* see also, *Anderson v. Liberty Lobby, Inc.,* supra at 256, 106 S.Ct. 2505; *Chism v. W.R. Grace & Co.,* 158 F.3d 988, 990 (8th Cir.1998). Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* supra at 322, 106 S.Ct. 2548; see also, *Greer v. Shoop,* 141 F.3d 824, 826 (8th Cir.1998); *Mayard v. Hopwood,* 105 F.3d 1226, 1228 (8th Cir.1997). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* supra at 323, 106 S.Ct. 2548; see also, *Bell Lumber and Pole Co. v. United States Fire Ins. Co.,* 60 F.3d 437, 441 (8th Cir. 1995); *McLaughlin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 510 (8th Cir.1995); *Settle v. Ross,* 992 F.2d 162, 163 (8th Cir. 1993).

B. *Legal Analysis.* Since they involve different considerations, we first address the Defendant's procedural challenge to the Plaintiff's Amended Complaint and, finding that discretion warrants an extension of time, until August 12, 1998, our analysis will then turn to the substantive issues.

### 1. *The Defendant's Insufficiency of Process Defense.*

■ The Defendant asserts that the entirety of the Plaintiff's Amended Complaint should be dismissed, without prejudice, pursuant to Rule 4(m), Federal Rules of Civil Procedure, because service of the Amended Complaint was not effected until well after 120 days from the filing of either the Plaintiff's original, or Amended Com-

plaint. In response, the Plaintiff seems to suggest that the Court should treat the Amended Complaint as having been served on the Defendant when, on April 9, 1998, a copy of the Amended Complaint was delivered to the Dorsey & Whitney lawfirm. Clearly, absent acquiescence by the Defendant, such a mode of service is plainly insufficient.

a. *Standard of Review.* Pursuant to Rules 4(e)(1) and 4(h), Federal Rules of Civil Procedure, service of process upon a corporation may be effected "pursuant to the law of the state in which the district court is located ***." Accordingly, as here pertinent, Rule 4.03(c), Minnesota Rules of Civil Procedure, provides that service of process upon a foreign or domestic corporation may be effectuated in the following manner:

> [B]y delivering a copy to an officer or managing agent, or to any other agent authorized *** impliedly *** to receive service of summons ***.

Rule 4(m), Federal Rules of Civil Procedure, authorizes a Court to dismiss an action if service of the Summons and Complaint is not made upon a defendant within 120 days after filing the Complaint. See, *Ouzts v. Cummins,* 825 F.2d 1276, 1278 (8th Cir.1987) (dismissal of *pro se* Complaint for failure to serve within 120 days of filing); *Healthcare Compare Corp. v. Super Solutions Corp.,* 151 F.R.D. 114, 115 (D.Minn.1993) (dismissal for failure to perfect timely service or show good cause for failure).

As Rule 4(m) makes clear, however, it is within the Court's discretion to determine whether "good cause" exists for extending the time for service. See, *Adams v. AlliedSignal General Aviation Avionics,* 74 F.3d 882, 887 (8th Cir.1996). As the Advisory Committee Notes to Rule 4(m) clearly evince, the "new Rule increases a district court's discretion to extend the 120–day time period by authorizing the court 'to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown.'" *Id.,* quoting *Rule 4 Advisory Committee Notes (1993).* Thus, if a "plaintiff fails to show good cause, the court still may extend the time for service rather than dismiss the case without prejudice." *Id.,* citing *Espinoza v. United States,* 52 F.3d 838, 841 (10th Cir.1995); *Petrucelli v. Bohringer & Ratzinger,* 46 F.3d 1298, 1305 (3rd Cir.1995).

b. *Legal Analysis.* The Plaintiff's failure to timely serve his Summons and Complaint upon the Defendant, or its agent,[3] as required under Rule 4.03, Minnesota Rules of Civil Procedure, arises from the Plaintiff's belief, albeit an incorrect one, that the Defendant was represented, at the time of the delivery of the Amended Complaint, by the Dorsey & Whitney law firm. Such a delivery, although personal, was plainly insufficient and, even though the delivery appears to have provided the Defendant with "actual notice" of the Plaintiff's claims, when a defendant has been improperly served, a Federal Court lacks jurisdiction over that defendant whether or

---

**3.** The Plaintiff attempts, in his Memorandum in Opposition to the Defendant's Motion for Summary Judgment, to establish that service upon Dorsey & Whitney was effective as to the Defendant, since the law firm was, impliedly, authorized to accept such process. In particular, the Plaintiff points to the fact that the Defendant was represented by Dorsey & Whitney, during the arbitration of his termination by the Defendant, and that, therefore, he reasonably inferred that the law firm continued to represent the Defendant in relation to his law suit. To be sure, service upon the counsel of a party opponent can be effective under Minnesota and Federal law. See, *Rule*

*5.02, Minnesota Rules of Civil Procedure; Rule 5(b), Federal Rules of Civil Procedure; Palmquist v. Onan Corp.,* 482 N.W.2d 791, 792 n. 1 (Minn.1992). Here, however, the Defendant has averred, without contradiction, that Dorsey & Whitney was neither retained as counsel at the time of the attempted service upon it, nor was it duly appointed as an agent for the purpose of accepting service. While, we cannot say that the error in the attempted service of process is of a type that warrants the dismissal of the Plaintiff's claims, we are also satisfied that service was not properly effected upon the Defendant's lawyers.

not the defendant had actual notice of the lawsuit. See, *Adams v. AlliedSignal General Aviation Avionics,* supra at 885, citing *Printed Media Services, Inc. v. Solna Web, Inc.,* 11 F.3d 838, 842 (8th Cir.1993).

Moreover, the Plaintiff fails to present "good cause" for the delay occasioned, between April 6, 1998—when we authorized the Clerk of Court to issue process to the Plaintiff for service upon the Defendant—and August 12, 1998, when service upon the Defendant was properly effected. Although the Plaintiff argues that he was appearing *pro se* and that, therefore, the Court should be particularly indulgent, is pure whimsy. Since January 12, 1998, when his original Complaint was filed, the Plaintiff has been served by legal counsel who are charged with knowledge of the governing Rules of Civil Procedure. Similarly, his assertion that he "believed" the United States Marshal's Service would be effecting service is clearly belied by the express language of the Orders that this Court issued, in January, February, and April of 1998. The first two Orders expressly precluded the Clerk of Court from delivering process to the Marshal for service, and the last directed the Clerk to forward process to the Plaintiff for service.

Counsel for Plaintiff erred in presuming than any mode of service would be legally effective, and after-the-fact rationalizations serve little purpose other than to advance straw man arguments. Nor are we persuaded that Plaintiff's Counsel was duped into a trap for the unwary. Had counsel reviewed the Answer, which the Defendant served, and filed with Court, counsel would have been that the Defendant was claiming that the service of process was insufficient. Either counsel did not review that Answer or, having read its contents, was sufficiently unconcerned with its affirmative defenses so as not to inquire as to their import.

Notably, the Plaintiff advances no argument that the Defendant refused to respond to an inquiry concerning the "insufficiency of process," or that the Defendant allayed any concern on the Plaintiff's part as to the effectiveness of service that the Plaintiff had attempted. Rather, the Plaintiff appears to believe that it is the Defendant's obligation to educate him on the prerequisites to effective service. While, under appropriate circumstances, a defendant's strategic delay in addressing a claimed absence of personal jurisdiction can constitute a waiver of that defense, no such delay is evident here. See, e.g., *Yeldell v. Tutt,* 913 F.2d 533, 539 (8th Cir. 1990) ("While [the defendants] literally complied with Rule 12(h) by including the jurisdictional issue in their answer, they did not comply with the spirit of the rule, which is "to expedite and simplify proceedings in the Federal Courts,'" when they did not actively attack personal jurisdiction over them until after a five-day Trial.), citing C. Wright & A. Miller, *5A Federal Practice and Procedure* § 1342 at 162 (2d ed.1990).

■■■ "A showing of good cause requires at least "excusable neglect"—good faith and some reasonable basis for noncompliance with the rules." *Adams v. AlliedSignal General Aviation Avionics,* supra at 887, citing *Lujano v. Omaha Public Power Dist.,* 30 F.3d 1032, 1035 (8th Cir. 1994), and *Pellegrin & Levine, Chartered v. Antoine,* 961 F.2d 277, 282–83 (D.C.Cir. 1992). Here, no such showing has been made. Of course, our discretion exceeds the necessity for such a showing, in an appropriate circumstance. While the issue is a close one, we believe that our discretion properly is exercised in extending the period, during which the Plaintiff's Complaint could be properly served upon the Defendant, until August 12, 1998. As we have previously observed:

> In our view, if the expanse of the Court's discretion encompasses the worst case scenario—where the inattention of Plaintiff's counsel allows the limitations period to expire—then we should be hard-pressed to find a justification for refusing to exercise that same discretion when far less draconian conse-

quences result from the Plaintiff's inattention.

On the other hand, counsel for the Plaintiff should not mistake our Recommendation as a license to employ less than close regard for the timely prosecution of its claim. We think that, as a matter of practicality, the exercise of the Court's discretion to enlarge should be inversely related to the length of counsel's inattention after the expiration of the 120–day period prescribed by Rule 4(m)—that is, as the period of inattention expands, the potential for the exercise of discretion should decline.

*Rollerblade, Inc. v. Rappelfeld,* 165 F.R.D. 92, 95 n. 1 (D.Minn.1995).

Here, the Clerk of Court was directed to transmit process to the Plaintiff on April 6, 1998, and an attempt to serve the Defendant—faulty as it was—was occasioned on April 9, 1998, just a few days after the Plaintiff's receipt of the process that was forwarded by the Clerk of Court. Service was properly effected upon the Defendant on August 12, 1998, a little more than 120 days after the Plaintiff received process from the Clerk of Court.[4] This minimal delay is too fleeting to warrant a dismissal of the Plaintiff's Amended Complaint, and we recommend that the Plaintiff be allowed, *nunc pro tunc,* until August 12, 1998, by which to effect service upon the Defendant.

### 2. *The Defendant's Substantive Defenses.*

■ In addressing the Defendant's contention, that each of the Plaintiff's discrimination claims should be dismissed, we encounter a threshold issue which requires disposition. The Plaintiff contends that

Defendant is guilty of continuing discrimination, while the Defendant responds that, of necessity, any discriminatory act could not have occurred after the Plaintiff's termination, and last day of work, on January 10, 1998.

Each of the Plaintiff's statutory claims of discrimination require, in differing intervals, the satisfaction of certain administrative prerequisites, prior to obtaining the right to pursue his claims of discrimination in Federal—or State—Court. Central to our consideration of whether the Plaintiff has satisfied the administrative prerequisites to his suit, is a determination of the date on which the Plaintiff was last, allegedly, subject to the alleged discrimination. As noted, the Plaintiff considers himself to be the victim of ongoing disability and age discrimination at the hands of the Defendant. Notwithstanding this argument, given the Plaintiff's status on medical leave, the Record, as a matter of law, would not allow a reasonable Jury to conclude that he has continued to suffer from discrimination by acts of the Defendant.

Affording the Plaintiff the benefit of every reasonable doubt concerning his claims of discrimination, we come, ineluctably, to the conclusion that the last possible date, on which the Plaintiff could properly complain of discrimination, as to the terms and conditions of his employment with the Defendant, is January 10, 1997—the last day on which he actually performed any employment duties for the Defendant. As reflected in the uncontested facts of this case, the Plaintiff's employment was terminated on January 10, 1997. Since that time, because of the Plaintiff's request to be placed on medical leave, he has not performed any duties for the Defendant.

---

4. We are mindful that the Defendant computes the 120–day period from January 12, 1998—the date on which the Plaintiff's original Complaint was filed with the Court, and cites a number of cases in support of that proposition. We have no occasion here, however, to address the propriety of those decisions, for our Orders precluded any service of process until such time as the Plaintiff amended his pleading so as to satisfy Rule 8(a), Federal Rules of Civil Procedure, and until he demonstrated his entitlement to pauper standing. Those preconditions to the service of process were not satisfied until April 6, 1998, when he directed the Clerk of Court to transmit process, for service upon the Defendant, to the Plaintiff.

Nonetheless, he maintains that the Defendant has refused to permit him to return to work, despite his efforts to convince the Defendant that he is ready to do so, albeit with the accommodation of being assigned different duties than he had previously performed. The Record does not support, however, the Plaintiff's contention that the Defendant's actions toward him, during the period of his convalescence, constituted a continuing course of unlawful discrimination.

Instead, the Record reflects, without contradiction, that the Defendant made repeated inquiries, and requests that, absent documentation that he was medically unable to do so, the Plaintiff return to work. See, *Defendant's Exhibits T–X.* After failing to respond to the Defendant's requests for a period of some six months following the original date for the expiration of the Plaintiff's medical leave, he provided the Defendant with a statement from his treating physician, Dr. Sheehy, that he was "unable to do physical work." *Letter from Dr. Sheehy dated June 15, 1998, Defendant's Exhibit Y.* Dr. Sheehy went on to advise the Defendant that the only work, which the Plaintiff could perform, was sedentary employment. *Id.* It was Dr. Sheehy's opinion that the Plaintiff's physical limitations were a permanent condition. *Id.*

The Plaintiff's physical limitations were coupled with a diagnosis of Major Depressive Disorder, which was made by the Plaintiff's examining psychologist, Brockman Schumacher ("Schumacher"), in October of 1997. In assessing the Plaintiff's Mental condition, Schumacher concluded that the Plaintiff's experience of depression, and anxiety, rendered him unable to return to work with the Defendant. *Schumacher Letter to Laska dated October 3, 1997, Defendant's Exhibit O.* Despite the

Plaintiff's assertion, that he sought accommodation from the Defendant, the Record is devoid of any request that the Defendant should accommodate his physical or mental conditions. See, *Braziel v. Loram Maintenance of Way, Inc.,* 943 F.Supp. 1083, 1099 (D.Minn.1996). Nor could there reasonably be such a request, as the combination of the Plaintiff's mental and physical limitations precluded his performance of any work for the Defendant.

Given the Record before us, the Plaintiff's allegation, that the Defendant continued to discriminate against him after his termination, is untenable as a matter of law. Therefore, in analyzing the viability of the Plaintiff's claims, we first conclude that the last possible date, on which the Plaintiff could have been the subject of discrimination at the hands of the Defendant, was January 10, 1997—the date on which his employment was terminated. With this backdrop, our consideration turns to the individualized Motions to Dismiss that have been advanced by the Defendant.

a. *Dismissal of the Plaintiff's ADEA Claims for Failure to Satisfy the Statutory Prerequisites to Suit.*

1) *Standard of Review.* The ADEA requires that, within 180 days of the alleged unlawful conduct of an employer, the employee file a charge describing unlawful conduct with the EEOC. See, *Title 29 U.S.C. § 626(d).*[5] The EEOC then notifies the employer and seeks "to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion." *Id.* If the parties have not compromised after 60 days, the employee can then file a civil suit under the ADEA. *Id.* See also; *Lorillard v. Pons,* 434 U.S. 575, 580, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978) (notice must be given of the intention to

---

**5.** Title 29 U.S.C. § 626(d)(1) provides as follows:

No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission. Such a charge shall be filed—

(1) within 180 days after the alleged unlawful practice occurred ***.

sue so that the EEOC or Secretary of Labor can attempt to eliminate the alleged unlawful practice through informal methods); *Brooks v. Monroe Sys. For Business, Inc.,* 873 F.2d 202, 205 (8th Cir.1989) ("The ADEA states that a civil action may not be commenced until sixty days after a charge alleging unlawful discrimination has been filed with the EEOC," citing *Title 29 U.S.C. § 626(d)),* cert. denied, 493 U.S. 853, 110 S.Ct. 154, 107 L.Ed.2d 112 (1989). A filing with the EEOC is a condition precedent to the later filing of a suit under the ADEA. See, *Boge v. Ringland–Johnson–Crowley Co.,* 976 F.2d 448, 450–51 (8th Cir.1992) (filing of charge with EEOC is required before the employee may initiate a civil suit under the ADEA); *Heideman v. PFL, Inc.,* 904 F.2d 1262, 1265 (8th Cir.1990) (filing with EEOC is a "prerequisite" to suit under the ADEA), cert. denied, 498 U.S. 1026, 111 S.Ct. 676, 112 L.Ed.2d 668 (1991); *Walker v. St. Anthony's Medical Ctr.,* 881 F.2d 554, 556 (8th Cir.1989) (timely filing of EEOC charge is "prerequisite" to suit); *Brooks v. Monroe Sys. For Business, Inc.,* supra at 205 (EEOC filing is a "condition precedent" to suit under the ADEA); *Kriegesmann v. Barry–Wehmiller,* 739 F.2d 357 (8th Cir.1984) (EEOC filing is condition precedent to suit), cert. denied, 469 U.S. 1036, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984).

■ Where an EEOC charge has been filed, a plaintiff exhausts his or her administrative remedies as to "the allegations of the judicial complaint [that are] like or reasonably related to the administrative charges that were timely brought." *Boge v. Ringland–Johnson–Crowley Co.,* supra at 451; *Anderson v. Block,* 807 F.2d 145, 148 (8th Cir.1986); see also, *Malarkey v. Texaco, Inc.,* 983 F.2d 1204, 1208 (2d Cir. 1993). Equitable relief from the "like or reasonably related" requirement is available where an employee who has filed a charge with the EEOC attempts to litigate a claim that is not part of the charge filed with the EEOC, but which the administrative body refused to accept as an amendment to the charge before it. *Boge v. Ringland–Johnson–Crowley Co.,* supra at 451–52.

■ Equitable remedies may also be available for a party who fails to file a charge of a violation of the ADEA with the EEOC within 180 days of the alleged misconduct. See, *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); *Heideman v. PFL, Inc.,* supra at 1265 (citing cases holding that the 180–day filing period may be equitably tolled); *Walker v. St. Anthony's Medical Ctr.,* supra at 557 (filing with EEOC is not jurisdictional, and the requirement is subject to equitable tolling, waiver, or estoppel). One basis for equitable tolling is the employee's ignorance of the statutory period, and another is predicated upon the actions of the employer. *Heideman v. PFL, Inc.,* supra at 1266. Our Court of Appeals has provided the following guidance as to when such tolling should occur, based on the employer's actions:

> The statute of limitations will not be tolled on the basis of equitable estoppel unless the employee's failure to file in timely fashion is the consequence either of a deliberate design by the employer or of actions that the employer should unmistakenly have understood would cause the employee to delay charge.

*Kriegesmann v. Barry–Wehmiller,* supra at 358–59; see also, *Heideman v. PFL, Inc.,* supra at 1266–67 (tolling appropriate because of the "employer's concealment, misrepresentation, or failure to post adequate notice," quoting *Nielsen v. Western Elec. Co., Inc.,* 603 F.2d 741, 743 (8th Cir.1979)); *Walker v. St. Anthony's Medical Ctr.,* supra at 557 (quoting the above from *Kriegesmann* ).

Summary Judgment is appropriate, on an ADEA claim, where the plaintiff fails to file the claim with the EEOC in a timely manner. *Nielsen v. Western Elec. Co., Inc.,* 603 F.2d 741 (8th Cir.1979).

2) *Legal Analysis.* Under the ADEA, a plaintiff who timely files a Charge of age discrimination with the EECC, and who thereafter receives a "right-to-sue" letter, has 90 days from the receipt of the letter to commence a suit to redress the actions complained of in his Charge of discrimination. See, *Title 29 U.S.C. § 626(e); Garfield v. J.C. Nichols Real Estate*, 57 F.3d 662, 667 (8th Cir.1995) (applying the 90 day period to dismiss ADEA claim as time-barred), cert. denied, 516 U.S. 944, 116 S.Ct. 380, 133 L.Ed.2d 303 (1995). The undisputed facts of this case reflect that the Plaintiff received his EEOC right-to-sue letter, as to his age discrimination Charge, on October 16, 1997. *Defendant's Exhibit CC.* Extending the date of the Plaintiff's receipt of his right-to-sue letter for a period of 90 days from that date—in order to comply with the statutory prerequisites to filing suit—the Plaintiff would have had to have commenced this action on or before January 14, 1998. As noted, the Plaintiff filed his original Complaint on January 12, 1998. At that time, the Plaintiff also applied to proceed *in forma pauperis.*

Upon our initial review of the Plaintiff's Complaint, as mandated by Title 29 U.S.C. § 1915(e)(2)(B), we found the Complaint to contain several fatal deficiencies. In an Order dated January 27, 1998, the Plaintiff was informed that his Complaint did not contain an adequate statement of his claim showing that he was entitled to relief. See, *Order of January 27, 1998* at 2, [Docket No. 3]. We explained that finding as follows:

> Although the Complaint is self-styled as a Title VII action, and alleges that the Defendant terminated the Plaintiff's employment, it does not describe the basis upon which the Plaintiff claims to have suffered illegal discrimination. As such, the Plaintiff has failed to provide the Defendant sufficient notice of the action pending against it, and his Complaint could be subject to summary dismissal for failure to state a claim upon which

relief could be granted, or to a Motion for a More Definite Statement.

*Id.* at 2–3.

This determination, that the Plaintiff's original Complaint failed to adequately notify the Defendant of the claims it purports to assert, is central to our inquiry into whether the Plaintiff satisfied the ADEA's requirement that he file his claim within 90 day of receiving a right-to-sue letter.

In the Federal Courts, a claim that is brought under a Federal statute is deemed to commence upon the filing of the Complaint with the Court. See, *Rule 3, Federal Rules of Civil Procedure.* We note that the Plaintiff's original Complaint alleged discrimination under Title VII, Title 42 U.S.C. § 2000e *et seq.* In compliance with our directive, that the Plaintiff amend his Complaint in conformance with Rule 8(a), Federal Rules of Civil Procedure, the Plaintiff filed an Amended Complaint on February 20, 1998. [Docket No. 7]. In his Amended Complaint, the Plaintiff alleged, for the first time, that the Defendant had subjected him to discrimination on the basis of age and disability, and was guilty of various State law violations. As well, the Plaintiff's Amended Complaint redacted all mention of his claims under Title VII, and asserted acts of discrimination, which were not alleged in his original Complaint, that occurred prior to his termination—the sole focus of his initial claims of discrimination.

Given these anomalies in the Plaintiff's original Complaint, the Defendant contends that the Plaintiff's ADEA claim should be dismissed, for failing to comply with the requirement that he commence his suit within 90 days after receiving a right-to-sue letter. As viewed by the Plaintiff, however, the filing of his original Complaint, on January 12, 1998, should be the point from which his compliance with the 90–day requirement is calculated and, as so computed, he has satisfied the 90–day filing requirement. Although his original Complaint made no mention of age discrimination, the Plaintiff argues that the "relation back" provision of Rule 15(c),

Federal Rules of Civil Procedure, applies to his Amended Complaint, such that the claims contained in that pleading should be deemed to have been originally asserted, on January 12, 1998, in his original Complaint.

As here pertinent, Rule 15(c) provides as follows:

An amendment of a pleading relates back to the date of the original pleading when

\* \* \* \* \* \*

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleadings \*\*\*.

*Rule 15(c)(2), Federal Rules of Civil Procedure.*

The Defendant counters that, contrary to the Plaintiff's construction of Rule 15(c), the allegations of the Plaintiff's Amended Complaint are too temporally, and substantively dissimilar, to those contained in his original Complaint, to allow them to be related back to the earlier pleading. We agree.

■ While, as noted, Rule 15(c) allows the relation back of amendments to pleadings in certain circumstances, the conduct alleged in the Plaintiff's initial Complaint cannot be said to have arisen out of the same set of facts as asserted in his amended claim. As a consequence, his amendment cannot, as a matter of law, relate back, and his claim becomes time-barred as not having been filed within the prescribed statutory period. " 'The rationale of Rule 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide.' " *United States v. Craycraft,* 167 F.3d 451, 457 (8th Cir.1999), quoting *In re Bellanca Aircraft Corp.,* 850

F.2d 1275, 1283 (8th Cir.1988), quoting in turn *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 150 n. 3, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984). The purpose of Rule 15(c) is to permit cases to be decided on their merits. See, *Gridley v. Cunningham,* 550 F.2d 551, 553 (8th Cir. 1977). "Thus, relation back has been permitted of amendments that change the legal theory of the action, see, e.g., *Donnelly v. Yellow Freight System, Inc.,* 874 F.2d 402 (7th Cir.1989), aff'd. on other grounds, 494 U.S. 820, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990), add other claims arising out of the same transaction or occurrence, see, e.g., *Federal Deposit Ins. Corp. v. Bennett,* 898 F.2d 477 (5th Cir.1990), or increase the amount of damages claimed." *Alpern v. UtiliCorp United, Inc.,* 84 F.3d 1525, 1543 (8th Cir.1996), citing, e.g., *Wm. T. Burton, Inc. v. Reed Roller Bit Co.,* 214 F.Supp. 84 (W.D.La.1963). In the final analysis, notice is the critical element when determining whether a claim relates back under Rule 15(c). See, *Schrader v. Royal Caribbean Cruise Line, Inc.,* 952 F.2d 1008, 1011–12 (8th Cir.1991). The amended claims must be factually consistent with those contained in the original pleading, such that the Defendant has been afforded fair notice of the claims asserted against it. *Id.*

■ Here, however, we preliminarily determined, in our Order of January 27, 1999, that the Plaintiff's original Complaint was fatally deficient in failing to provide even minimal notice of the nature of the claims that the Plaintiff was attempting to assert against the Defendant. The form Complaint, which was filed by the Plaintiff on January 12, 1998, advised only that he was bringing a Title VII action against the Defendant, for discrimination in his termination of employment, or in its refusal to rehire him.[6] Although the Plaintiff now maintains that the basis for his claims, as

---

6. Indulgently, we interpret the Plaintiff's original allegation to voice a claim that the Defendant refused to accommodate his physical and mental impairments, in order that he might return to work from his medical leave status, even though the Plaintiff had not, as a technical matter, left the Defendant's employment at that time.

contained in his original Complaint, are the same as those that form the basis for his Amended Complaint, we are unable to envision any means by which the Defendant could have understood what the factual basis for those claims were originally purported to be. Until the Plaintiff filed his Amended Complaint on February 20, 1999, there was no information, as then pled, that satisfied the most minimalistic form of notice pleading, as required under Rule 8(a). Quite simply, the original Complaint could not have placed the Defendant on notice of the factual basis for the Plaintiff's claims, and we are obligated to fix the commencement of this action, for the purpose of determining the Plaintiff's compliance with the ADEA's 90–day requirement, at February 20, 1998.[7]

Clearly, then, by filing his Amended Complaint on February 20, 1998, which first provided notice of his age discrimination claims, the Plaintiff has not satisfied the time prerequisites to suit under the ADEA, and under the EEOC regulations promulgated thereunder. Accordingly, the Defendant's Motion for Summary Judgment on this claim should be granted.

b. *Dismissal of the Plaintiff's ADA Claims for Failure to Satisfy the Statutory Prerequisites to Suit.*

 1) *Standard of Review.* The ADA was enacted as a statutory remedy for individuals with disabilities, who experience discrimination in employment, and in other contexts. See, *Title 42 U.S.C. §§ 12101(b)(1), and 12112(a).* By its terms, the ADA incorporates several of the "powers, remedies, and procedures," of Title VII of the Civil Rights Act of 1964, *Title 42 U.S.C. § 2000e–4, –5, –6, –8, –9,* into its own regulatory scheme. In order

to pursue a claim of discrimination under the ADA, a plaintiff must exhaust his administrative remedies. See, *Hayes v. Blue Cross Blue Shield of Minnesota, Inc.,* 21 F.Supp.2d 960, 969 (D.Minn.1998); *Tschida v. Ramsey County,* 927 F.Supp. 337, 340 (D.Minn.1996). In this context, "[e]xhaustion requires that a timely charge of discrimination be filed with the EEOC," *Tschida v. Ramsey County,* supra at 340, and the plaintiff must "receive, from the EEOC, a 'right to sue' letter." *Shannon v. Ford Motor Co.,* 72 F.3d 678, 684 (8th Cir.1996); *Hayes v. Blue Cross Blue Shield of Minnesota, Inc.,* supra at 969; see also, *Title 42 U.S.C. §§ 2000e–5(b), (c), (e); Hanenburg v. Principal Mutual Life Ins. Co.,* 118 F.3d 570, 573 (8th Cir.1997) (Title VII case); *Osborn v. E.J. Brach, Inc.,* 864 F.Supp. 56, 58 (N.D.Ill.1994).

A plaintiff's opportunity to exhaust his administrative remedies, and to preserve his claims for a possible judicial determination, is not without limit. If the charge of discrimination is not filed with the EEOC, within 300 days of the date of the alleged discrimination, or within 30 days after receiving notice than a State or local agency has terminated its enforcement proceedings, then the claim becomes time-barred. See, *Hayes v. Blue Cross Blue Shield of Minnesota, Inc.,* supra at 969; *Braziel v. Loram Maintenance of Way, Inc.,* supra at 1092 n. 5; see also, *Dade v. Southwestern Bell Tel. Co.,* 942 F.Supp. 312, 318 (S.D.Tex.1996); *Layser v. Morrison,* 935 F.Supp. 562, 567 (E.D.Pa.1995).

2) *Legal Analysis.* The Defendant moves for a dismissal of the Plaintiff's ADA claims because of an asserted failure to timely file the requisite Charge of disability discrimination with the EEOC. As

---

7. The Plaintiff's Memorandum fails to address the timeliness of his suit under the ADEA. Instead, the Plaintiff has chosen to focus his response to the Motion for Summary Judgment on the merits of his ADA claim. Nevertheless, the Defendant's Motion does not seek Judgment on the merits of the Plaintiff's claim, but relies upon the Plaintiff's failure to comply with the requisites of the ADEA, and we do not address the merits of the Plaintiff's claim here. Given the singular focus of the Plaintiff's opposition to Summary Judgment, we are left without any showing that grounds exist to equitably toll the 90–day limitations period, and we are independently aware of no such grounds.

noted, the last date upon which the Plaintiff could reasonably complain, that the Defendant discriminated against him was based upon his alleged disabilities, was January 10, 1997—the date of his employment termination. Under the ADA, a plaintiff must bring a suit for any alleged discriminatory conduct within 300 days of the challenged action. Here, assuming for argument's sake, that the Plaintiff's termination was improperly premised on animus toward him as a disabled employee, he was required to bring his suit, on such a claim, by no later than October 7, 1997. As we have noted, however, the Plaintiff's original Complaint was not filed until January 12, 1998, and the effective commencement of his action did not occur until the filing of his Amended Complaint on February 20, 1998. Applying either of these· filing dates, the Plaintiff's claim of disability discrimination, under the ADA, is time-barred, and Counts I and III, as properly subject to dismissal.

c. *Dismissal of the Plaintiff's MHRA Claims for Failure to Satisfy the Statutory Prerequisites to Suit.*

In determining whether the Plaintiff's claims under the MHRA are time-barred, we must first determine when an action under the MHRA is commenced for statute of limitations purposes.

As we have noted, under Rule 3, Federal Rules of Civil Procedure, an action is commenced upon the filing of a Complaint. Under the Minnesota's procedural rule, however, an action is commenced upon the service of process, irrespective of when the Complaint is filed. See, *Rule 3.01, Minnesota Rules of Civil Procedure, Metropolitan Fed. Bank of Iowa, F.S.B. v. W.R. Grace & Co.,* 999 F.2d 1257, 1261· (8th Cir.1993); *Concordia College Corp. v. W.R. Grace & Co.,* 999 F.2d 326, 328–29 (8th Cir.1993), cert. denied, 510 U.S. 1093, 114 S.Ct. 926, 127 L.Ed.2d 218 (1994). For purposes of the MHRA claim, the Plaintiff's Complaint was filed on February 20, 1998, and service of process was effected on August 12, 1998, when the Complaint was properly served upon the Defendant. State rules for the service of process apply to pendent State law claims. See, *Walker v. Armco Steel Corp.,* 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980); *Anderson v. Unisys Corp.,* 47 F.3d 302, 309 (8th Cir.1995); *Appletree Square I v. W.R. Grace & Co.,* 29 F.3d 1283, 1286 (8th Cir.1994). With this backdrop, we turn to consider the timeliness of the Plaintiff's claims under the MHRA.

■ 1) *Disability Under the MHRA.* In order to pursue a claim under the MHRA, a plaintiff, at his option, must either file an administrative Charge, or bring a civil· action within one year after the occurrence of the alleged discriminatory act.[8] See, *Minnesota Statute Section*

---

**8.** The Plaintiff attempts to cure his otherwise untimely Charge by characterizing his filing of January 14, 1998, with the EEOC and the MDHR, as having "amended" his Charge of June 6, 1997, for age discrimination. It appears that, by depicting the latter Charges of discrimination as amending the earlier Charges, the Plaintiff wished to have that filing relate back to the filing of his original Charge, which was filed in June 6, 1997, so as to render them timely under the applicable State law. The Plaintiff's position in this respect must be rejected.

The Record reflects that, at the time of his Charge of January 14, 1998, the EEOC, and the MDHR, had closed their respective files on the Plaintiff's earlier claim of age discrimination. Upon filing his latter "amended" Charges of discrimination, which encompassed new claims, and the new factual bases for those Charges, the Plaintiff's MDHR file was assigned a new number by the agency. Compare, *Defendant's Exhibit BB,* with *Defendant's Exhibit HH.* Furthermore, the Plaintiff had already attempted to commence his legal action, based upon the right-to-sue letter obtained from the EEOC, at the time that he purports to have amended the Charge upon which the suit was based. Under these circumstances, it cannot reasonably be argued that the Plaintiff's "amended" claims related back to his Charge of age discrimination in June of 1997, so as to satisfy the one-year filing requirements of the MHRA. Cf., *Balazs v. Liebenthal,* 32 F.3d 151, 157 (4th Cir.1994) ("[w]here, as here, a right to sue letter has issued, a suit has been initiated and the EEOC

363.06, Subdivision 1 and 3; Minnesota Statutes Section 363.14, Subdivision 1; State by Beaulieu v. RSJ, Inc., 552 N.W.2d 695 (Minn.1996); Schiele v. Charles Vogel Mfg. Co., Inc., 787 F.Supp. 1541 (D.Minn.1992). Here, the Plaintiff filed his first Charge of discrimination, which related to a claim of disability discrimination—owing to his physical impairments, and the fact that the Defendant assertedly regarded him as disabled because of alcoholism—on January 14, 1998. Defendant's Exhibits AA, FF. The Plaintiff's lawsuit was not filed, let alone served, until January 12, 1998. The last date as to which the Plaintiff can responsibly allege discriminatory treatment, by the Defendant, was January 10, 1997. Conclusively, the Plaintiff failed to bring the statutorily required Charge of disability discrimination until after the one-year limitations period, which expired on January 10, 1998. Accordingly, the Defendant's Motion for Summary Judgment, on the Plaintiff's claim of disability discrimination under the MHRA, should be granted.

■ 2) *Age Discrimination Under the MHRA.* The Plaintiff's allegations of age discrimination suffers from similar administrative deficiencies as undermined his MHRA disability claims. Where—as in the

case of the Plaintiff's age-based discrimination claims—a plaintiff timely files an administrative Charge of discrimination, the MHRA requires that he bring suit within 45 days of notice of dismissal of the Charge by the MDHR. See, Minnesota Statutes Section 363.14, Subdivision 1; Klinghagen v. Setterberg, 1998 WL 249028 *1 (Minn.App., May 19, 1998), rev. denied (Minn., July 16, 1998); Ochs v. Streater, Inc., 568 N.W.2d 858, 859 (Minn.App.1997); Breen v. Norwest Bank Minnesota, 865 F.Supp. 574, 580 (D.Minn.1994).

Here, the Plaintiff received notice from the MDHR that his original Charge of age discrimination was dismissed on January 12, 1998. Since State law commencement procedures apply to the Plaintiff's pendent State law claims, service of the Complaint is required to satisfy the timing requirements of the MHRA. Here, the most liberal construction of Minnesota's service requirements places the commencement of the Plaintiff's legal action on April 9, 1998, some two and one-half months after the expiration of the 45–day commencement requirement. As a result, the Plaintiff may not maintain an action against the Defendant, for age discrimination, under the MHRA.

has closed its file, there is no longer a charge pending before the EEOC which is capable of being amended.").

Nor do we consider the Plaintiff's discrimination Charge of January 14, 1998, to be closely interrelated to his original claim of discharge. See, *Anderson v. Block*, 807 F.2d 145, 148 (8th Cir.1986) (untimely administrative filing may be treated as an amendment to earlier charge if new charge "directly related to or grew out of the practices challenged in the prior charge"); *29 C.F.R. § 1601.12(b)*. It is well-settled that a plaintiff "may raise claims in his lawsuit which 'grow out of' or are 'like or reasonably related' to the administrative charges." *Philipp v. ANR Freight System, Inc.*, 61 F.3d 669, 676 (8th Cir.1995), quoting *Wentz v. Maryland Cas. Co.*, 869 F.2d 1153, 1154 (8th Cir.1989). Otherwise stated, the original charge may be expanded to include "what EEOC investigation could reasonably be expected to grow from the original complaint." *Schnellbaecher v. Baskin Cloth-*

ing Co., 887 F.2d 124, 127 (7th Cir.1989); see also, *EEOC v. Delight Wholesale Co.*, 973 F.2d 664, 668 (8th Cir.1992). Here, the Plaintiff's new claims allege that he was discriminated against on the basis of his disability and age, for acts which occurred both prior to and after his initial termination on January 10, 1997. The only similarity between his new claims, and the original charge of age discrimination related to his termination, is that all of the claims are premised on allegations of age and disability discrimination. Clearly, the mere similarity as to the type of discrimination is not sufficient to expand the scope of the original charge. See, *Braziel v. Loram Maintenance of Way, Inc.*, 943 F.Supp. 1083, 1092 n. 5 (D.Minn.1996), citing *Boge v. Ringland–Johnson–Crowley Co.*, 976 F.2d 448, 451 (8th Cir.1992) (the fact that each act was motivated by age discrimination is not enough to expand the scope of the administrative complaint).

### d. *The Plaintiff's Breach of Employment Contract Claim.*

Next, the Plaintiff alleges that the Defendant's discriminatory conduct breached its oral promise, as well as those promises contained in its "equal employment statement," to treat him fairly. See, *Amended Complaint,* Count IV, ¶¶ 68 and 73. The Plaintiff's claims fail, however, for, under Minnesota law, the policy statements upon which he bases this claim are too tenuous to form a legally enforceable contract. In addition, because the claims are premised upon the Defendant's discriminatory conduct toward the Plaintiff, they are preempted by the MHRA, which is the exclusive avenue by which to redress the conduct of which he complains. Specifically, the Plaintiff asserts that the Defendant breached his employment agreement by "not honoring its promises to not discriminate against its employees." *Amended Complaint,* ¶ 72. Further, the Plaintiff contends that the Defendant breached its promise "to give accommodation to employees with disabilities," when it refused to do so for him. *Id.,* ¶ 73. The Plaintiff's Complaint further avers that the Defendant's breach occurred when it wrongfully attempted to terminate his employment. *Id.,* ¶ 74.

■ To the extent that the Plaintiff's claim asserts that the Defendant's statement of an equal employment policy forms the basis for an enforceable employment contract, the applicable precedents make abundantly clear that such policies may not support the Plaintiff's claim of a breach of contract claim. Such policies are, as a matter of law, too indefinite to form an enforceable contract between an employer and its employee. See, *Eldeeb v. University of Minnesota,* 864 F.Supp. 905, 912 (D.Minn.1994) (holding that non-discrimination brochure is a statement of policy that is too general to create a contract), aff'd, 60 F.3d 423 (8th Cir.1995); *Miller v. CertainTeed Corp.,* 971 F.2d 167, 171–72 (8th Cir.1992) (finding employer's policy statement cannot form a basis of a contract offer); *Elliott v. Montgomery Ward & Co.,* 967 F.2d 1258, 1263 (8th Cir.1992) (affirming summary dismissal of contract claim that equal opportunity employer provision in manual was not a contract); *Goodkind v. University of Minnesota,* 417 N.W.2d 636, 639 (Minn.1988) (reversing Court of Appeals, and holding that an employer's policy statement "are just that, statements of policy, and do not meet the contractual requirements for a [contract] offer"); *Ruud v. Great Plains Supply, Inc.,* 526 N.W.2d 369 (Minn.1995) (ruling that Summary Judgment in favor of employer proper where employee failed to demonstrate that employer intended to modify employment contract, or that there was a definite offer of employment on particular terms). To the extent that the Plaintiff's claims rely upon the Defendant's statement of a policy not to discriminate, those "promises" are legally insufficient to sustain a breach of contract action.

■ Second, the Plaintiff's claim of breach of employment contract arises out of the Defendant's alleged discriminatory conduct toward him. As will be discussed in greater detail in our discussion of the Plaintiff's common law negligence claims, common law claims that arise out of conduct that are violative of the MHRA, are statutorily preempted thereby. See, e.g., *Thompson v. Campbell,* 845 F.Supp. 665, 667 (D.Minn.1994) (granting Summary Judgment because the MHRA precludes common law claims for adverse employment action covered by the MHRA).

■ Lastly, the Plaintiff's Memorandum in Opposition attempts to defeat the Defendant's Motion by asserting, for the first time, that the "promises" alleged in his Complaint establish a cause of action for promissory estoppel. Although the Plaintiff did not raise this claim in any of his pleadings, the Minnesota Court of Appeals has permitted consideration of such a claim where it is alleged for the first time in opposition to a Summary Judgment Motion, and in conjunction with a properly

**1004**

pleaded claim for breach of contract. See, *Deli v. Hasselmo*, 542 N.W.2d 649, 657 (Minn.App.1996), rev. denied, (Minn, April 26, 1996). Following the lead of the Minnesota Court of Appeals, and addressing the Plaintiff's claim of promissory estoppel on its merits, we are convinced that this claim would fail for lack of a sufficiently definite promise, or any detrimental reliance on the part of the Plaintiff.

Promissory estoppel is a creature of equity, which implies a contract in law where none exists in fact. See, *Ruud v. Great Plains Supply, Inc.*, supra at 372. As a general rule, then, promissory estoppel is not available where a contract exists. See, *Banbury v. Omnitrition Int'l*, 533 N.W.2d 876, 881 (Minn.App.1995). The Minnesota Supreme Court has carved out an exception to the general rule, where "the contract is of a type that provides no basis for a contract recovery, i.e., an at-will employment contract." *Gorham v. Benson Optical*, 539 N.W.2d 798, 801 (Minn.App. 1995), citing *Grouse v. Group Health Plan, Inc.*, 306 N.W.2d 114, 116 (Minn.1981). To make out a claim for promissory estoppel, a plaintiff must show that: 1) there was a clear and definite promise; 2) the promisor intended to induce reliance rely on the promise, and that the promisee did so rely; and 3) that an injustice will occur unless the promise is enforced. See, *Guinness Import Co. v. Mark VII Distributors, Inc.*, 153 F.3d 607, 613 (8th Cir.1998), citing *Ruud v. Great Plains Supply, Inc.*, supra at 372.

Two impediments exist, however, which preclude the application of the doctrine of promissory estoppel to the facts asserted by the Plaintiff. First, as we have discussed, the "promises" made to the Plaintiff were not so definite as to constitute a promise of continued employment. Rather, "[a]n employer's general statements of policy are no more than that and do not meet the contractual requirements for an offer." *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 626 (Minn.1983), citing *Degen v. Investors Di-*

*versified Services, Inc.*, 260 Minn. 424, 110 N.W.2d 863 (Minn.1961). It is not clear, either from the Complaint or from the Plaintiff's Memorandum in Opposition to this Motion, what were the exact promises that were allegedly made to him.

Although the Plaintiff refers in his Complaint to "oral promises" made to him by the Defendant, he does not identify what they were, when they were made, or who made them. He does not contend, for example, that he was promised continued employment with the Defendant. Nor is it evident from the Plaintiff's Memorandum, and supporting materials, what policy statements should be considered to have formed a promise upon which the Defendant intended to induce his reliance, and upon which the Plaintiff relied.

Moreover, the Plaintiff has proffered no affidavit which would serve to competently evidence that he reasonably relied upon any promise of the Defendant to his detriment. See, *Rule 56(e), Federal Rules of Civil Procedure* ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but *** by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."). The Plaintiff's Memorandum in Opposition suggests that he detrimentally relied upon the alleged promise, that he would not be discriminated against, by his continuing to work for the Defendant, with consequent discrimination. Even if the allegations contained in a adverse party's Memorandum of Law were sufficient to establish a material issue for Trial, we would, nonetheless, be compelled to find that such reliance is not the type which would sustain an action for promissory estoppel. Mere continued employment does not constitute detrimental reliance. See, *Dumas v. Kessler & Maguire Funeral Home, Inc.*, 380 N.W.2d 544, 548 (Minn. App.1986). To the extent that the Plaintiff argues, that his experience of discrimina-

tion satisfies the requirement of detrimental reliance, he has provided no statutory or decisional authority for that proposition and, upon our independent research, we find none.

In sum, affording the Plaintiff the broadest reading of his Complaint, Memorandum in Opposition, and supporting affidavits and materials, his claim of promissory is legally insufficient, and we recommend that his breach of contract, and promissory estoppel claims, be dismissed as legally without merit.

### e. *The Negligent Hiring, Supervision and Retention Claims.*

 1) *Standard of Review.* Minnesota recognizes three distinct causes of action when a plaintiff sues an employer in negligence, for injuries caused by the conduct of one of its employees; namely, negligent hiring, negligent retention, and negligent supervision. See generally, *Cook v. Greyhound Lines, Inc.,* 847 F.Supp. 725, 732 (D.Minn.1994) (comparing negligent employment doctrines). Negligent employment, in general, imposes direct liability on the employer only where the plaintiff's injuries are the result of the employer's failure to take reasonable precautions to protect her from the misconduct of her fellow employees. See, *Ponticas v. K.M.S. Investments,* 331 N.W.2d 907, 911 n. 5 (Minn.1983).

 Negligent hiring, has been described by the Minnesota Supreme Court as:

> [T]he negligence of an employer in placing a person with known propensities, or propensities which should have been discovered by reasonable investigation, in an employment position in which, because of the circumstances of employment, it should have been foreseeable that the hired individual posed a threat of injury to others.

*Id.* at 911.

 As a precondition to liability, "under the theory of negligent hiring[,] an employer must breach its 'duty to exercise reasonable care in view of all the circumstances in hiring individuals who, because of the employment, may pose a threat of injury to members of the public.' " *Smith v. DataCard Corp.,* 9 F.Supp.2d 1067, 1082 (D.Minn.1998), quoting *Ponticas v. K.M.S. Investments,* supra at 911. The Court explained, as follows, that the degree of care required, in hiring a new employee, is largely dependent upon the nature of the position:

> The scope of the investigation is directly related to the severity of the risk third parties are subjected to by an incompetent employee. *** [O]nly slight care might suffice in the hiring of a yardman, a worker on a production line, or other types of employment where the employee would not constitute a high risk of injury to third persons ***.

*Ponticas v. K.M.S. Investments,* supra at 913.

 A negligent retention claim might arise, however, "when an employer becomes aware or should have become aware that an employee poses a threat and fails to take remedial measures to ensure the safety of others." *Benson v. Northwest Airlines, Inc.,* 561 N.W.2d 530, 540 (Minn. App.1997), rev. denied (Minn., June 11, 1997), citing *Yunker v. Honeywell, Inc.,* 496 N.W.2d 419, 423 (Minn.App.1993), rev. denied (Minn., April 20, 1993).

 Under Minnesota law, a viable claim of negligent retention requires the existence of at least a threat of, or reasonable apprehension of, physical injury. *Thompson v. Olsten Kimberly Qualitycare, Inc.,* 980 F.Supp. 1035, 1041 (D.Minn. 1997), citing *Bruchas v. Preventive Care, Inc.,* 553 N.W.2d 440, 442–43 (Minn.App. 1996). Employment based sexual harassment involves enough of a threat of a physical injury to permit a negligent retention claim. *Smith v. DataCard Corp.,* supra at 1083; *D.W. v. Radisson Plaza Hotel Rochester,* 958 F.Supp. 1368, 1378 (D.Minn.1997); *Mandy v. Minnesota Min-*

*ing & Mfg.*, 940 F.Supp. 1463, 1470–72 (D.Minn.1996); *Thompson v. Campbell*, 845 F.Supp. 665, 676 (D.Minn.1994). While the issue remains in dispute, there is a consensus that the negligent retention doctrine imposes liability for an employee's torts which " 'almost invariably' occur outside the scope of employment." *Bruchas v. Preventive Care, Inc.*, supra at 442; *D.W. v. Radisson Plaza Hotel Rochester*, supra at 1378. In *Cook v. Greyhound Lines, Inc.*, supra at 733, we concluded that the doctrine could only logically apply when the employee acted outside of the course of his, or her, employment, or else it would merely reiterate the precepts of *respondeat superior*, a less than useful development in the law. See, *Thompson v. Olsten Kimberly Quality-care, Inc.*, supra at 1041 n. 4.

Finally, the doctrine of negligent supervision imposes a duty on employers to exercise ordinary care in supervising the employment relationship, so as to prevent the foreseeable misconduct of an employee from causing harm to others. *Cook v. Greyhound Lines, Inc.*, supra at 732. In contrast to the doctrine of negligent retention, negligent supervision evolved from the *respondeat superior* doctrine, see, *Ponticas v. K.M.S. Investments*, supra at 910, and liability can only be based upon a tort that was committed within the employee's scope of employment. *Bruchas v. Preventive Care, Inc.*, supra at 443; *Oslin v. State*, 543 N.W.2d 408, 414 (Minn.Ct.App.1996); *Rosenbloom v. Senior Resource, Inc.*, 974 F.Supp. 738, 745 (D.Minn.1997).

2) *Legal Analysis.* In the present case, three fatal deficiencies are evident in the Plaintiff's claim that the Defendant was negligent in the hiring, retention, and supervision, of its employees. To begin with, the Plaintiff's negligence claims arise out of the same facts applicable to his MHRA claims. Moreover, his negligence claims arise out of the same duty not to discriminate, in the terms and conditions of employment, that are required under the MHRA. Because the acts of which the Plaintiff complains—namely, the discrimination of Defendant's employees against him on the basis of age and disability, his claim is necessarily preempted by application of the MHRA.

The Minnesota Supreme Court has held that a plaintiff may simultaneously pursue claims under the MHRA, and common law negligence, that arise from the same underlying facts. See, *Vaughn v. Northwest Airlines, Inc.*, 558 N.W.2d 736, 744–45 (Minn.1997) (finding no preemption where separate duties owed under MHRA and common law negligence); see also, *Wirig v. Kinney Shoe Corp.*, 461 N.W.2d 374, 379 (Minn.1990) (holding that a sexual harassment action brought pursuant to MHRA does not bar a parallel action for common law battery). However, the plaintiff's negligence claims must be founded on a duty of care independent from duties owed under the MHRA. In *Vaughn*, the defendant owed separate duties under the MHRA, which was based upon the plaintiff's disability, and common law negligence, that was based upon the failure of airline employees to assist the plaintiff with her baggage. *Vaughn v. Northwest Airlines, Inc.*, supra at 744–45. In that situation, where the duties under the MHRA, and under the common law, had distinct origins, the common law claims were appropriately asserted separate and apart from the plaintiff's MHRA claim. The same cannot be said here.

In this case, there is no doubt that the Plaintiff's negligence claims arise from the same duty as generate his discrimination claims under the MHRA, since the only acts, of which he complains, are the acts of discrimination he asserts against the Defendant. Unlike *Vaughn* and *Wirig*, there is no distinction in the duties owed to the Defendant under the MHRA, and under the common law. Since the Plaintiff has not identified any duty, that was owed to him separate from the duty created by the MHRA, the negligence claims are preempted, and Summary Judgment is ap-

propriate. See, *Moss v. Advance Circuits, Inc.*, 981 F.Supp. 1239, 1252 (D.Minn.1997) (MHRA preempts common law negligent hiring and retention claims, where the common law duty of care is identical to its statutory duty not to discriminate).

■ In addition, each of the Plaintiff's negligence claims fail for want of an essential element to that claim. First, with respect to the claim that the Defendant was negligent in the hiring or selection of employees, who thereafter subjected him to discriminatory treatment, the allegations, and supporting materials, which have been presented by the Plaintiff, fail to allege that any of the employees, whose conduct he challenges, were persons who, at the time of hiring, had "known dangerous propensities" that posed a threat of physical harm to the Plaintiff. See, *Smith v. DataCard Corp.*, supra at 1082. In fact, the Plaintiff does not allege that any physical harm was ever threatened by a co-employee, let alone was perpetrated upon him. The Plaintiff's Complaint merely asserts that the Defendant "had a duty of care to take reasonable steps selecting *** its supervisors, managers and work forces to insure that there was not age discrimination, gender discrimination or discrimination against people with a disability ***." *Amended Complaint* at ¶ 80. Without some showing—that is absent here—which reasonably suggests that the Defendant knew, or should have known, that the allegedly offending employee had a propensity to cause harm to others, the Plaintiff's claim of negligent hiring cannot survive the Defendant's Motion for Summary Judgment.

■ Similarly, the absence of any alleged threat of physical harm, or of the Defendant's knowledge that an employee retained proclivities that threatened the safety of its other employees, defeats the Plaintiff's negligent retention claim under Minnesota law. See, *Thompson v. Olsten Kimberly Qualitycare, Inc.*, supra at 1041, citing *Bruchas v. Preventive Care, Inc.*, supra at 442–43.

■ A same conclusion follows with respect to the Plaintiff's claim of negligent supervision. Minnesota Courts have repeatedly held that a claim for negligent supervision may not be maintained without the presence, in the Record, of some threatened or actual instance of physical harm to the Plaintiff. See, *Patterson v. Wu Family Corp.*, 594 N.W.2d 540, 551 (Minn.App.1999); *Bruchas v. Preventive Care, Inc.*, supra at 443, citing *Semrad v. Edina Realty, Inc.*, 493 N.W.2d 528, 533–34 (Minn.1992). Without belaboring the point, there is no suggestion in the Record before us that the Plaintiff was the subject of any threatened physical harm, and his claim in this respect must fail as a matter of law.

■ f. *The Negligent Training Claim.* With respect to the Plaintiff's negligent training claims, Minnesota does not recognize such a cause of action. See, *Mandy v. Minnesota Mining and Manufacturing*, 940 F.Supp. 1463, 1473 (D.Minn. 1996); *M.L. v. Magnuson*, 531 N.W.2d 849, 856 (Minn.App.1995) ("Minnesota recognized three causes of action where a claimant sues an employ in negligence for injuries caused by one of its employees: negligent hiring, negligent retention, and negligent supervision."), rev. denied (Minn., July 20, 1995); *Fletcher v. St. Paul Pioneer Press*, 1995 WL 379140 (Minn. App., June 27, 1995), (no case law recognizing an independent cause of action for negligent training), rev. denied (Minn., Aug. 30, 1995), rev. denied (Minn., Oct. 10 1995); *Hermeling v. Montgomery Ward & Co., Inc.*, 851 F.Supp. 1369, 1381 n. 11 (D.Minn.1994) (granting Summary Judgment on negligent training claim because action not cognizable under Minnesota law, and acts complained of were subsumed by plaintiff's negligent supervision claim); see also, *Cook v. Greyhound Lines, Inc.*, supra at 732 (comparing negligent employment doctrines).

Here, then, the Plaintiff's claim, that the Defendant was negligent in its training of

**1008**

its personnel, is not cognizable under Minnesota law. Any claim that the Plaintiff has, regarding discriminatory treatment at the hands of his co-employees, must be addressed in the context of a negligent supervision claim. See, *Hermeling v. Montgomery Ward & Co., Inc.,* supra at 1381 n. 11; *Fletcher v. St. Paul Pioneer Press,* supra at *4, citing *Cook v. Greyhound Lines, Inc.,* supra at 732. We have already determined, however, that the Plaintiff's claims with respect to the Defendant's alleged negligent supervision of its employees fails, as a matter of law, because: 1) the Plaintiff was not threatened with physical injury; 2) he failed to produce evidence reasonably leading to a conclusion that the purportedly offending employees had a known propensity which posed a threat to other employees; and 3) his claims are preempted by the MHRA. So, too, his claim, that the Defendant negligently trained its employees, must legally fail, as there is no allegation that the Plaintiff was physically threatened in the course of his alleged discriminatory treatment, and because those claims are preempted under the MHRA. Consequently, we recommend that the Plaintiff's claims of negligent training be dismissed, in accordance with the Defendant's Motion.

Having found that each of the Plaintiff's claims is without legal merit, we recommend that the Defendant's Motion for Summary Judgment be granted in its entirety.

NOW, THEREFORE, It is—

RECOMMENDED:

1. That the Defendant's Motion for Summary Judgment [Docket No. 16] be granted.

2. That Judgment be entered in accordingly.